**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Conservator for Columbus Savings & Loan Association, Plaintiff,**

v.

**Ted A. MUSACCHIO, et al.,
Defendants.**

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Conservator for Columbus Savings & Loan Association, Plaintiff,**

v.

**Theodore A. MUSACCHIO, a/k/a Ted A. Musacchio, Defendant.**

**Nos. C–86–6641 RFP, C–87–2604 RFP.**

United States District Court,
N.D. California.

June 17, 1988.

See also 695 F.Supp. 1044.

Stephen E. Taylor, David F. Gross, Mark
C. Dosker, Graham & James, San Francis-
co, Cal., for plaintiff FSLIC.

William E. Bennett, San Jose, Cal., C. Judith Johnson, Burlingame, Cal., for defendants Trade Wind Traders, Inc. and Patricia Henry.

Lee Ann Huntington, Morgenstein & Jubelirer, Michael I. Spiegel, Spiegel, Cutler, Liao & Kagay, San Francisco, Cal., for defendant Ted A. Musacchio.

Philip E. Bass, Titchell, Maltzman, Mark, Bass, Ohler & Mishel, San Francisco, Cal., for defendant Herbert Worden.

Jeremiah F. Hallisey, Hallisey & Johnson, San Francisco, Cal., for defendant Robert W. Kenney.

John A. Koeppel, Lisa Lorea, Ropers, Majeski, Kohn, Wagner & Kane, Barry D. Hovis, Adams, Sadler & Hovis, San Francisco, Cal., for defendants Joseph Garbarino, et al.

John Enscoe, Red C. Radosevich, Landels, Ripley & Diamond, San Francisco, Cal., for defendant Frederick A. Fuchs.

Neil Bloomfield, Law Offices of Neil Bloomfield, Fairfax, Cal., for defendant Charlotte Noda.

Eric J. Noda, Novato, Cal., in pro. per.

AMENDED MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

PECKHAM, Chief Judge.

## INTRODUCTION

Defendant Theodore A. Musacchio moves to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. The defendant argues that the plaintiff Federal Savings and Loan Insurance Corporation ("FSLIC") has failed to plead essential elements of fraud, that the plaintiff has not pleaded its allegations of fraud with sufficient particularity, that the statute of limitations bars the plaintiff's claims based on negligence, and that the alleged breach by the defendant of the Federal Home Loan Bank Board ("FHLBB") supervisory agreement of June 12, 1984 does not create a private right of action for the FSLIC as conservator of Columbus Savings and Loan Association ("Columbus"). For the reasons that follow, this motion is granted in part and denied in part.

## BACKGROUND

Defendant Theodore A. Musacchio is a founder and principal shareholder of Columbus. Until the Columbus Board of Directors ("Board") terminated his employment in late 1985, the defendant served as Columbus' president. These actions seek to hold the defendant personally liable for a variety of alleged acts of fraud, negligent misrepresentation, breach of fiduciary duty and negligence.

The complaints detail the activities of the defendant and others in connection with Columbus. These allegations are described in greater detail in the course of the discussion of the motion to dismiss. Briefly, in its original complaint the plaintiff accuses the defendant of fraud, negligent misrepresentation, gross negligence and breach of fiduciary duty, and states that he guided Columbus "from a traditional homeowner-oriented savings and loan association in 1982 to a prolific real estate venturer and commercial lender in 1984–1985, to a deteriorated and insolvent wreck in late 1985 and early 1986." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 5.

Following an investigation of Columbus' affairs, the Federal Home Loan Bank Board ("FHLBB") entered into a supervisory agreement with Columbus dated June 12, 1984. Pursuant to that agreement, the Federal Savings and Loan Insurance Corporation ("FSLIC") intervened in the day-to-day management of Columbus with the authority to regulate how Columbus conducted its business. On April 14, 1986, the FHLBB declared Columbus insolvent and appointed the FSLIC conservator.

The plaintiff filed its complaint on November 28, 1986 (the "FSLIC Complaint"). The defendant then filed a petition under Chapter 11 of the Bankruptcy Code. The plaintiff filed a second complaint in bankruptcy court (the "Bankruptcy Complaint")

to determine the dischargeability of the defendant's debts pursuant to the claims against him in the original complaint. Ultimately, the bankruptcy action was consolidated with the original action in this court.

Based upon the same allegations of fact as the FSLIC complaint, the bankruptcy action states claims for nondischargeability against the defendant for debts incurred through false representation, fraud and defalcation while acting in a fiduciary capacity, and willful and malicious injury. Except where otherwise noted, the defendant moves to dismiss both complaints on the same grounds.

## DISCUSSION

In considering the defendant's motion to dismiss, the court must presume that the plaintiff's allegations are true, granting the motion only if it appears "beyond doubt" that the plaintiff can prove no set of facts entitling it to relief. *Simon Oil Co. Ltd. v. Norman*, 789 F.2d 780, 781 (9th Cir.1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987).

1. *Defendant's motion to dismiss for plaintiff's failure to plead its allegations with sufficient particularity.*

In its FSLIC Complaint, the plaintiff partly relies on a common law fraud claim against the defendant. Under Federal Rule of Civil Procedure 9(b), fraud claims are subject to a higher pleading standard than are most other claims. *See McFarland v. Memorex Corp.*, 493 F.Supp. 631, 638 (N.D.Cal.1980), *reconsideration granted on other grounds*, 581 F.Supp. 878 (N.D.Cal.1984). Rule 9(b) provides:

> In all averments of fraud ..., the circumstances constituting fraud shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) is intended to ensure that the defendant in a fraud claim will have adequate notice of the nature of the charges against him, permitting him a meaningful opportunity to respond. *Wool, supra,* 818 F.2d at 1439; *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). "It also prevents the filing of a complaint as a pretext for the discovery of unknown wrongs," and prevents the harm to one's reputation that accompanies even unjustified charges of fraud. *Id.* Accordingly, the plaintiff must identify "circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973). Although mere conclusory allegations of fraud are insufficient, statements of the "time, place and nature of the alleged fraudulent activities" do suffice. *Walling, supra,* 476 F.2d at 397; *see also Semegen, supra,* 780 F.2d at 731 (dismissing fraud claim for want of particularity). Rule 9(b) does not require that the plaintiff plead matters best left to discovery or trial. *Walling, supra,* 476 F.2d at 397–98.

Here, the plaintiff has joined its claims of fraud and negligent misrepresentation with claims of fiduciary breach. "Generally, [Rule 9(b)] does not extend to allegations of breach of duty. However, when the conduct underlying the breach of fiduciary duty is also alleged to constitute fraud, the requirement does apply." *Roskos v. Shearson/American Express, Inc.*, 589 F.Supp. 627 (E.D.Wisc.1984). Thus, the court distinguishes between fiduciary breach claims based upon the duty of loyalty, and those based upon a breach of the duty of care, applying the requirements of Rule 9(b) only to the former.

Applying these principles to the instant case, the plaintiff bears the burden of pleading what fraudulent statements were made, the nature of their fraudulence, and the time and place of their utterance. The defendant argues that the FSLIC Complaint does not disclose who discovered his alleged misconduct, who conducted the investigation revealing the alleged abuses, and how the plaintiff learned the facts underlying its claims, and urges the court to conclude that the plaintiff has not met its pleading burden.

The court disagrees, however. In virtually every instance in which fraud is al-

leged, the plaintiffs have set forth the time, place and manner of the allegedly fraudulent acts. *How* the plaintiffs obtained these facts is certainly relevant, but it is essentially an evidentiary matter best left to discovery. For example, the plaintiff alleges that the defendant committed fraud and negligent misrepresentation in connection with the Serramonte Highlands real estate venture. Specifically, the plaintiff claims that the defendant failed to disclose to the Board at its April 26, 1983 meeting any negative conclusions or recommendations with respect to the project, even though a disinterested senior Columbus officer had analyzed the proposal at the defendant's request and urged that it be rejected as too risky. Such allegations provide the defendant with ample notice as to the time, place and manner of the alleged fraudulent act—the failure to disclose the negative recommendation. In sum, the plaintiff has provided sufficient detail to rebut the defendant's charges that the plaintiff's fraud claims amount to a mere fishing expedition.

■ The defendant also attacks the fact that much of the plaintiff's FSLIC Complaint is founded on "information and belief." Indeed, "[a]llegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)." *Wool, supra,* 818 F.2d at 1439 (quoting *Zatkin v. Primuth,* 551 F.Supp. 39, 42 (S.D.Cal.1982)). The plaintiff may evade this requirement by showing that the evidence at issue is exclusively within the defendant's control, as is often the case in instances of alleged corporate wrongdoing (*see Zatkin, supra,* 551 F.Supp. at 42), and by pleading those facts underlying its belief (*see McFarland, supra,* 493 F.Supp. at 638–39).

Here the plaintiff has done neither. First, the plaintiff has not demonstrated that the evidence at issue is solely under the defendant's control. This exception to Rule 9(b)'s particularity requirement, clearly designed to aid the corporate stockholder seeking to do battle with corporate operatives, makes a good deal of sense. *See, e.g., Wool, supra; McFarland, supra.* In this case, however, the government does not in the least resemble the lone, beleaguered shareholder faced with an unyielding, silent, corporate behemoth. The government took over as conservator of Columbus in April, 1984. Although the alleged acts of fraud occurred prior to FHLBB intervention, the government has since enjoyed unlimited access to Columbus' affairs. This is hardly the sort of situation that the exception contemplates.[1]

Second, the plaintiff does not plead those facts upon which its "information and belief" is based. For example, in connection with the Serramonte Highlands project, the FSLIC Complaint states:

35. The FSLIC is ... informed and believes that, before presenting the project to the [Columbus] Board, Musacchio discussed the proposed transaction with Kenney and asked him to review it. The FSLIC is informed and believes that after Kenney reviewed information on the proposed joint venture, he concluded Columbus should not enter into a joint venture for the development of the Serramonte Highlands project....

36. The FSLIC is informed and believes and on that basis alleges that when Kenney reported his conclusions to Musacchio, Musacchio told Kenney that, regardless of Kenney's evaluation of the transaction, Columbus would enter into [the] joint venture agreement....

FSLIC Complaint ¶¶ 35–36. As the above exerpts demonstrate, the plaintiff has not pleaded those facts underlying its information and belief.

---

1. The plaintiff cites *Wool* as support for its argument that pleading on information and belief suffices in this case. In *Wool,* the Ninth Circuit scrutinized the class action complaint of a stock purchaser charging corporate officers with fraud and breach of fiduciary duty, concluding that the particularity requirements of Rule 9(b) had been met. *Wool* presents a somewhat different case, however; as an individual shareholder, the plaintiff in *Wool* was more deserving of a relaxation of Rule 9(b)'s requirements than is the FSLIC in the instant case. Notwithstanding this distinction, both in *Wool* and in this case the plaintiff has alleged the instances of fraud with considerable precision. *See Wool, supra,* 818 F.2d at 1439–40.

Nevertheless, the court denies defendant's motion to dismiss based upon the lack of particularity of the plaintiff's fraud averments. Rule 9(b) exists not to erect rigid pleading barriers, but to provide the defendant with fair notice of the plaintiff's claims, and to ensure that the complaint is based on a reasonable belief that a wrong has been committed. As in the *Wool* case recently before the Ninth Circuit, *see Wool, supra*, 818 F.2d at 1439–40, the plaintiff's complaint is sufficiently precise and detailed to fulfill these functions. Requiring the plaintiff to amend its complaint to provide the factual bases for each and every allegation would serve no useful purpose.

In the alternative, the defendant moves for a more definite statement with respect to the fraud claims pursuant to F.R.C.P. 12(e). Curiously, the defendant argues that the complaint is too "complex" (Memorandum Supporting Defendant's Motion to Dismiss C–86–6641 RFP at 12), even though the complaint is elsewhere criticized as insufficiently detailed. In any event, the proper test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings. *Famolare Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D.Cal.1981).

■ In keeping with its analysis under Rule 9(b), the court concludes that the FSLIC Complaint as submitted provides ample notice of the basis for the claims against the defendant. The proper avenue for eliciting additional detail is discovery, not a Rule 12(e) motion. *Kuenzell v. United States*, 20 F.R.D. 96, 98 (N.D.Cal.1957). Therefore, the defendant's motion for a more definite statement should also be denied.

*2. Defendant's Motion to Dismiss for Legal Insufficiency.*

a. Plaintiff's fraud allegations in general.

The plaintiff asserts a number of claims against the defendant relying upon the common law of fraud. "The elements of actual fraud, whether as the basis of the remedy in contract or tort, may be stated as follows: There must be (1) a *false representation* or concealment of a material fact ... susceptible of knowledge, (2) made with *knowledge* of its falsity or without sufficient knowledge on the subject to warrant a representation, (3) with the *intent* to induce the person to whom it is made to act upon it; and such person must (4) act in *reliance* upon the representation (5) to his *damage*." *Reed v. King*, 145 Cal.App.3d 261, 264, 193 Cal.Rptr. 130, 131 (3d Dist. 1983) (quoting 1 Witkin, *Summary of Cal.Law* (8th ed. 1973) Contracts, § 315) (italics in original) (footnote omitted).

■ The defendant argues that the intent component of fraud means "intent to cause injury," citing *Carlson v. Murphy*, 8 Cal.App.2d 607, 612, 47 P.2d 1100, 1103 (1935). Memorandum in Support of Defendant's Motion to Dismiss at 5–6. In *Carlson* the court held, "to state a cause of action for legal relief; based upon actual fraud, a plaintiff must allege an intention on the part of the defendant to induce the particular action which resulted in the damage." *Id.*, 47 P.2d 1100, 1103. The California Supreme Court explicated the intent requirement of actual fraud in *Seeger v. Odell*, 18 Cal.2d 409, 115 P.2d 977 (1941), stating:

A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon....

In the present case the allegations of the plaintiff's complaint, if true, are sufficient to establish the right to relief on the basis of a fraudulent misrepresentation. According to these allegations the misrepresentation was made by the defendants ... with the knowledge that it was false and with the intention of inducing plaintiffs to act in reliance upon it, and plaintiffs did act in reliance thereon.

18 Cal.2d at 414–15, 115 P.2d at 980–81 (citations omitted). Both *Carlson* and *Seeger* make clear that the plaintiff must merely allege that the defendant intended to induce the plaintiff to act, and that this action in turn led to the plaintiff's injury.

Nowhere is it held, however, that the defendant's must intend that the *injury* occur. In collapsing both elements of this test into one, the defendant distorts the requisite showing of intent that the plaintiff must make. Thus, the defendant's motion to dismiss on this ground must be denied.[2]

The defendant elsewhere argues that as principal shareholder of Columbus he lacked any motive to do Columbus harm. As noted above, however, the defendant's intent to *do injury* to Columbus is irrelevant; he need only have intended that Columbus act in reliance on his alleged fraudulent acts. Moreover, the defendant's countervailing motives, if any, raise questions of fact not properly resolved on a motion to dismiss.

■ Next, the defendant contends that the plaintiff has failed to allege that the defendant's mistatements of fact, if made, were material. California courts regard the materiality of a given misrepresentation as "a question of fact for the trial court." *Chalas v. Andersen,* 192 Cal.App. 2d 452, 456, 13 Cal.Rptr. 257, 259 (1st Dist. 1961). In each instance, the plaintiff has alleged the materiality of the facts misrepresented or concealed and the actions by Columbus induced thereby, thus preserving these factual questions for trial or on motion for summary judgment. Accordingly, the defendant's motion to dismiss on these grounds should likewise be denied.

b. **Specific allegations of fraud, negligent misrepresentation or breach of fiduciary duty.**

The defendant moves to dismiss particular averments in the FSLIC Complaint due to legal insufficiency or failure to plead with sufficient particularity. The court considers each of these arguments in turn.

*i. The Serramonte Highlands project.*

■ The defendant argues that the plaintiff has failed to plead the "scienter" requirement in connection with the defendant's allegedly fraudulent handling of the Serramonte Highlands project. The FSLIC Complaint alleges, *inter alia,* that prior to the purchase of the land upon which the project was to be built, the defendant concealed an appraisal showing that the land's worth was considerably lower than the price Columbus ultimately paid. The defendant argues that the complaint fails to aver that the defendant knew of the existence of the appraisal, and thus lacked the "knowledge of falsity" or "scienter" requirement for fraud.

The defendant is quite right that scienter is a necessary element of a claim of fraud. The plaintiff did meet its pleading burden, however. The complaint expressly provides that, "[a]t the time the [land appraisal was] concealed, ... Musacchio ... knew of the existence of such facts and that such facts were not known to Columbus." The defendant's argument that this is insufficiently particular is to no avail, as Rule 9(b) expressly provides that averments concerning mental state may be made generally.

The defendant also challenges the plaintiff's contention that the defendant misrepresented to the Board that all the conditions for approval of the project had been met. The defendant contends that the FSLIC Complaint fails to describe what those conditions were, and thus fails to indicate whether those conditions were ma-

---

**2.** The court notes further the Supreme Court's dicta in *S.E.C. v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 192 n. 39, 84 S.Ct. 275, 283 n. 39, 11 L.Ed.2d 237 (1963) (quoting 1 Harper & James, *The Law of Torts* 531 (1956); W. Prosser, *The Law of Torts* 538 (1955)) (citation omitted):

Even in a damage suit between parties to an arm's length transaction, the intent which must be established need not be an intent to cause injury to the [plaintiff].... "[I]t is to be noted that it is not necessary that the person making the representations intend to cause loss to the other or gain a profit for himself; it is only necessary that he intend action in reliance on the truth of his representations." ... "[T]he fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from liability, so long as he did in fact intend to mislead."

The defendant is quite right that this passage is mere dicta as applied to a common law fraud claim. The defendant errs, however, when he argues that the Supreme Court's view is inconsistent with California law.

terial to the Board's decision to approve the project.

Once again, the defendant appears to ignore entire paragraphs in the complaint. Paragraphs 38 and 39 of the FSLIC Complaint provide:

> On June 7, 1983, ... the Board approved entry into the Serramonte Highlands joint venture with FDC.... The Board's approval was made subject to eight express conditions, one of which was that Musacchio obtain Frumenti's personal guaranty of FDC's obligations under the joint venture agreement.
>
> ... On June 14, 1983, Musacchio reported to the Board that all eight conditions set forth in the Board resolution approving the Serramonte Highlands project had been met....

Elsewhere the plaintiff alleges that these misrepresentations were material and that the defendant knew them to be false. FSLIC Complaint ¶¶ 121, 125, 134. Accordingly, the defendant's challenges to the legal sufficiency of this portion of the complaint are without merit.

■ The complaint also alleges that the defendant presented a plan to the Columbus Board in August, 1985 whereby Frumenti's share of the Serramonte Highlands joint venture would be collaterized by Frumenti's stock in Delta Pacific Bank. The plaintiff claims that the defendant later deleted this provision from the joint venture agreement without Board knowledge or approval. The defendant argues that the plaintiff has failed to establish scienter in connection with this allegation. Once again, the defendant appears to have failed to read the entire complaint. Paragraph 123 states: "On August 28, 1985, without disclosure to the Board of this fundamental change to the collateralization plan which had been approved by the Board, Musacchio ... executed the modified addendum [omitting the Delta Pacific Bank stock as collateral]." The plaintiff has obviously met its burden as to pleading scienter when it alleges that the defendant signed the document that deviated from the plan approved by the Board.

Finally, the defendant contends that the plaintiff has failed to plead that the defendant's alleged acts were the proximate cause of the harm that Columbus suffered. Paragraphs 125 and 126 expressly allege that the defendant's conduct proximately caused Columbus' losses.

### ii. The fee arrangement with Eric J. Noda.

■ The FSLIC Complaint alleges that the defendant entered into a fee arrangement with Columbus employee Eric J. Noda whereby Noda would "take a fee from loan participations to be purchased by Columbus from Midwest Financial Services," arranging his fee directly with Midwest. FSLIC Complaint ¶ 70. The plaintiff charges that this confidential arrangement violates federal regulations and state and federal criminal statutes, including 18 U.S.C. section 215. The defendant responds that this charge should be dismissed as a matter of law, arguing that such an arrangement constitutes a bona fide commission in the ordinary course of business, expressly permitted by 8 U.S.C. section 215(c).

The defendant has provided an insufficient basis for concluding that this fee arrangement fell within section 215(c). Significantly, the fee was to come from Midwest—the entity placing the loan participations—and not from Columbus. This alone suffices to take the arrangement out of the realm of a commission in the ordinary course of business, at least for the purposes of a 12(b)(6) motion.

Moreover, the complaint charges the defendant not with violating any statute, but with concealing (either negligently or fraudulently) this agreement, further alleging that the defendant had a duty to disclose to the Board any personal interest that Noda might have in the transactions he conducted as an officer of Columbus. Accordingly, the court denies the defendant's motion to dismiss the complaint on these grounds.

■ The defendant further moves to dismiss those claims arising out of Noda's purchase of loans from his former employ-

er, Avco Financial Services. The complaint alleges that many of these loans were either in default, improperly underwritten, or had poor performance records. FSLIC Complaint ¶¶ 72–73. The defendant correctly points out that the complaint does not allege that the defendant knew or should have known of these loan purchases, or, if he did know of the purchases, what actions he took in response. There is thus no basis for concluding that the defendant committed fraud, negligent misrepresentation or breach of fiduciary duty in connection with Columbus' purchase of the Avco loans.

The plaintiff responds that the Avco loan purchases were but one aspect of the illegal fee arrangement between Noda and the defendant, and that the fees from Midwest were "in lieu of" fees for the purchase of the Avco loans. FSLIC Complaint ¶ 70. If that is the case, then the plaintiff does not present the defendant's involvement in the Avco loan purchases as an independent grounds for liability. The complaint does not make this clear. Thus, the court must dismiss the complaint as it relates to the defendant's involvement in the Avco loan purchases, granting the plaintiff leave to amend to state clearly whether it states such a claim, and if so, on what grounds it seeks relief.

■ The complaint also details the alleged diversion of loan proceeds by Noda during his tenure at Columbus, and then avers that "Noda's deliberate misconduct ... was known and approved, in whole or in part, by Musacchio." FSLIC Complaint ¶ 84. Such conclusory allegations do not provide the defendant with the notice envisioned by Rule 9(b), and thus do not provide the defendant the opportunity to frame a response. For much the same reasons, the complaint fails adequately to state a cause of action for negligent misrepresentation or breach of fiduciary duty in connection with these transactions. Thus the court dismisses the complaint against the defendant in connection with paragraphs 78 through 84 of the complaint, granting the plaintiff leave to amend the complaint to state with particularity the

manner in which the defendant was liable in connection with Noda's alleged diversion of loan proceeds.

### iii. 505 Montgomery joint venture.

Paragraphs 47 through 63 of the complaint raise a number of claims pertaining to the defendant's conduct in connection with Columbus' participation in a joint venture to develop an office complex at 505 Montgomery Street. In response, the defendant raises a number of factual issues that are not properly addressed via a motion to dismiss. In addition, the defendant moves to dismiss for legal insufficiency. The defendant's contention that the allegations are not pleaded with sufficient particularity is without basis, however. For example, the complaint alleges that the defendant represented to the Columbus Board that $7.1 million in participations to other institutions had been arranged for the project, when in fact the defendant arranged only $4.0 million in participations. FSLIC Complaint ¶¶ 49–51.

In addition, the plaintiff argues that the defendant's alleged conduct in connection with this project constitutes breach of the fiduciary duty of care. The defendant has provided no basis for dismissing this portion of the plaintiff's cause of action.

### iv. Lending practices generally.

■ Paragraphs 64 through 68 of the FSLIC Complaint outline allegedly unsafe, unsound and imprudent lending practices of Columbus caused or permitted by the defendant. These allegations are attacked as too imprecise. Indeed, although the complaint enumerates a number of such practices, it provides no specific instances of misconduct. These allegations clearly lack the particularity required by Rule 9(b). They are therefore dismissed as they relate to claims alleging fraud, negligent misrepresentation, or fiduciary breach based upon fraudulent activities.

■ No such pleading requirement exists with respect to fiduciary breach of the duty of care, however. The misconduct alleged in the complaint, while conclusory, is sufficiently precise to provide the de-

fendant with notice of the claims alleged. Therefore, these allegations are not dismissed as they relate to fiduciary breach of the duty of care.[3]

### v. Transactions with Centennial Savings.

■ The defendant also challenges the sufficiency of the complaint with respect to allegations of improper transactions with officers of Centennial Savings. The complaint avers that the defendant authorized loans to Centennial officers without needed Board approval, frequently "on terms substantially more favorable to the borrower than those then prevailing in the market or available to other Columbus borrowers." FSLIC Complaint ¶¶ 85–89. The complaint fails to describe the exact time, place and manner of such allegedly fraudulent activities, however. Accordingly, it does not meet the pleading standards of Rule 9(b), and is therefore dismissed with leave to amend.

Paragraphs 90 through 94 of the complaint do provide one specific instance of allegedly improper loans authorized by the defendant, however. The complaint details the nature of the loan, the time that it was made, the manner in which it worked a fraud on Columbus, and the specific directives that it violated. The defendant's motion to dismiss with respect to this portion of the complaint is denied.

### vi. Allegedly excessive expenditures.

■ Finally, the complaint alleges that the defendant exceeded the express $450,-000 cap on expenditures to furnish the the third and fourth floors of Columbus' new headquarters building, charging that the defendant actually spend $1.45 million, including lavish improvements to the defendant's own office. FSLIC Complaint ¶¶ 95–100. The complaint does not specify whether this money was spent on the building as a whole, or simply on the third and fourth floors. Thus, the allegations, if

true, provide an insufficient basis for finding that the defendant wasted corporate assets in violation of his fiduciary duty. The court therefore dismisses this portion of the complaint with leave to amend.

### c. Defendant's invocation of the business judgment rule.

■ The defendant argues that the plaintiff, in charging the defendant with negligence and fiduciary breach, has failed to plead the inapplicability of the business judgment rule. The defendant's motion on these grounds is defective for a number of reasons and is therefore denied. First, the business judgment rule is a defense, properly raised by the defendant in response to allegations of misconduct. See, e.g., Marble v. Latchford Glass Co., 205 Cal.App.2d 171, 176–77, 22 Cal.Rptr. 789, 791–92 (2d Dist.1962); see also Gearhart Indus., Inc. v. Smith Int'l, Inc., 741 F.2d 707, 721 (5th Cir.1984); Abramowitz v. Posner, 513 F.Supp. 120, 125 (S.D.N.Y.1981), aff'd, 672 F.2d 1025 (2d Cir.1982).

Second, a ruling on the applicability of the business judgment rule is peculiarly a question of fact, wholly inappropriate for consideration on a motion to dismiss. See Gilbert v. Bagley, 492 F.Supp. 714, 738 (M.D.N.C.1980). Thus, the defendant's objections to the pleadings based upon the business judgment rule have no merit.

### 3. Defendant's Motion to Dismiss Plaintiff's Allegation of "Negligence Per Sé".

■ The defendant moves to dismiss the allegations that he was "negligent per sé" in failing to adhere to various deposit insurance statutes and regulations. See FSLIC Complaint ¶¶ 104, 116–17. The defendant argues that the concept of negligence per sé is inapplicable where, as here, the plaintiff is not in the class intended to be protected by the statute.

Federal Rule of Evidence 302 provides that "the effect of a presumption respect-

---

**3.** The defendant also argues that, as a matter of law, he cannot be held responsible for the conduct of each and every one of his subordinates at Columbus during his tenure there. Whether

the defendant should be held so responsible is clearly a question of fact for the trial and cannot properly be considered here.

ing a fact which is the element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with state law." Here, the underlying claim is for common law negligence. Looking to state law, California Evidence Code section 669(a) provides:

(a) The failure of a person to exercise due care is presumed if:

(1) He violated a statute, ordinance, or regulation of a public entity;

(2) The violation proximately caused ... injury to the person or property;

(3) The ... injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and

(4) The person suffering the ... injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

The defendant only contests the applicability of the fourth element of this standard. In considering this question generally, the Ninth Circuit has stated, "[v]iolation of a statute intended to protect the interest of the state, or of the community at large, rather than that of any particular individual or class, is not negligence per se." *Arney v. United States*, 479 F.2d 653, 657–58 (9th Cir.1973) (quoting 35 Cal.Jur.2d Negligence, § 18, at 504–06 (1957)). Thus, the question reduces to whether the financial institution is itself within the class intended to be protected by the statutes and regulations that the defendant is charged with violating, or whether the statutes and regulations protect society at large.

In the context of applying the *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1974), test for determining whether this same federal law gave rise to an implied private cause of action, one district court stated, "Congress certainly meant to protect savings and loan institutions by authorizing the cited regulations. It is just as likely, though, that Congress intended to protect the public at large. The legislative history of the enforcement provisions supports both interpretations." *FSLIC v. Capozzi*, 653 F.Supp. 591, 601 (E.D.Mo.1987).

Aside from this one ambivalent remark, neither party provides the court with any caselaw discussing this issue in a context helpful to determining the applicability of California's negligence per sé presumption. The *Capozzi* court does cite an excerpt from the Senate Report for the Home Owners Loan Act ("HOLA") which states: "[Congress granted the FSLIC] these powers [to take remedial action] ... to prevent violations of law or regulation ... which might otherwise adversely affect the Nation's financial institutions, with resulting harmful consequences to the growth and development of the Nation's economy." S.Rep. No. 1482, *reprinted in* 1966 U.S. Code Cong. and Admin.News 3532 at 3533. This passage suggests both that HOLA seeks to protect financial institutions like Columbus and that the Act is a "general welfare" type statute that would not give rise to California law's "negligence per sé" presumption.

In view of this ambivalence, the court appears free to either accept or reject the applicability of the presumption. The court elects to accept it. The "negligence per sé" presumption under California law is permissive, not mandatory; the defendant is free to rebut the presumption, and the fact-finder is free to reject it. Under such circumstances, it seems wise to permit the use of federal statutes and regulations as a benchmark for prudent conduct. Accordingly, the motion to dismiss plaintiff's claims based upon the "negligence per sé" presumption is denied.

4. *Defendant's Motion to Dismiss Allegations of Negligence as Barred by the Statute of Limitations.*

██ The defendant moves to dismiss all negligence claims arising out of acts taking place before November 28, 1984, two years prior to the filing of this complaint. In support of his motion, the defendant argues that section 339(1) of the California Code of Civil Procedure, which provides for a two-year limit on filing actions, sets forth the applicable statute of limitations for actions based on the neglect of corporate officers.

At first blush, the statute of limitations set forth in 28 U.S.C. section 2415(b), not the relevant state statute of limitations, would seem to control actions brought by FSLIC. Section 2415(b) provides in relevant part:

> [E]very action for money damages brought by the United States or an ... agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues....

Section 451 of Title 28 defines "agency" as used in section 2415(b) as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." This definition obviously includes the FSLIC. Indeed, 12 U.S. C. section 1730(k)(1)(A) specifically provides: "Notwithstanding any other provision of law, ... the [FSLIC] shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28...." [4] Moreover, the FSLIC is operated by and subject to the direction of the FHLBB, which is itself an agency of the United States. 12 U.S.C. § 1725(a). The FHLBB, "including the [FSLIC]," is an independent agency in the executive branch of the federal government. 12 U.S.C. § 1437(b). In keeping with the express language of these provisions, the federal statute of limitations would seem to apply.

In *FSLIC v. Sajovich*, 642 F.Supp. 74 (C.D.Cal.1986), the court adopted a parallel argument in holding that the FSLIC possessed agency jurisdiction to commence a suit against former directors of a defunct savings and loan. The court noted that 12 U.S.C. section 1730(k)(1)(A) provides that the FSLIC is an "agency" and that 28 U.S.C. section 1345 establishes federal jurisdiction over those cases commenced by agencies. *Id.* at 76. The same reasoning holds true here: the FSLIC is an agency pursuant to section 1730(k)(1)(A), and 28 U.S.C. section 2415(b) sets forth the statute of limitations applicable to tort actions "brought by" agencies.

The defendant argues that the FSLIC, as federal conservator for a state-chartered savings and loan, "stands in the shoes" of Columbus, and thus is subject to the same statute of limitations that Columbus would be had it brought this action on its own behalf. The FSLIC was appointed as conservator pursuant to 12 U.S.C. section 1729(c)(1)(B)(i), which provides:

> (I) Notwithstanding any provision of the constitution or laws of any State, or of this section, in the event that the [FHLBB] determines that any of the grounds specified in section 1464(d)(6)(A)(i), (ii), or (iii) of this title exist with respect to an insured institution, other than a Federal association, the [FHLBB] shall have *exclusive power and jurisdiction* to appoint the [FSLIC] as sole conservator or receiver of such institution.
>
> (II) In such cases the [FSLIC] shall have the same powers and duties with respect to insured institutions as are conferred upon it under subsection (b) of this section with respect to Federal associations. (emphasis added)

The FHLBB thus possesses the "discretion and exclusive authority to appoint FSLIC as sole conservator of a FSLIC-insured, state-chartered institution...." *San Marino Savings and Loan Ass'n v. FHLBB*, 605 F.Supp. 502, 507 (C.D.Cal.1984) (appointment under 12 U.S.C. § 1729(c)(1)(B)).[5]

---

**4.** The exception referred to in this section pertains to whether certain claims "arise under" the laws of the United States, as provided in 12 U.S.C. §§ 1730(k)(1)(B) and (C), and not to the FSLIC's status as an agency under 28 U.S.C. § 451. See *FSLIC v. Sajovich*, 642 F.Supp. 74, 76 (C.D.Cal.1986).

**5.** This provision should be distinguished from 12 U.S.C. § 1729(c)(1)(A), which provides:

> In the event any insured institution other than a Federal association is in default, the [FSLIC] shall have authority to act as conservator, receiver, or other legal custodian of such insured institution, and the services of the [FSLIC] are tendered to the court or other public authority having the power of appointment. If the [FSLIC] is so appointed, it shall have the same powers and duties with respect to the insured institution in default as are

A recent Ninth Circuit decision specifically states that federal law controls federally authorized receiverships. In *Fidelity Financial Corp. v. FSLIC*, 834 F.2d 741 (9th Cir. Nov. 17, 1987), the appropriate state authority appointed the FSLIC receiver of Fidelity Financial under state law. The FHLBB then "federalized" this appointment pursuant to 12 U.S.C. section 1729(c)(2). The Ninth Circuit held that, at the moment the FHLBB exercised its authority under section 1729(c)(2) and named FSLIC receiver, "federal law governed what FSLIC did." *Id.* at 745.[6]

Here, FSLIC was initially appointed conservator of Columbus pursuant to federal law. Following *Fidelity Financial*, federal law governs its actions from that moment forward. Indeed, FSLIC's power to commence and maintain this action derives from federal law. 12 C.F.R. § 548.2. Accordingly, the federal statute of limitations set forth in 28 U.S.C. section 2415 applies.

In view of the above, we hold that the federal statute of limitations controls, regardless of whether the FSLIC brings this suit in its corporate or conservatorship capacity. Although we acknowledge the many cases noting the FSLIC's dual character,[7] this distinction is not determinative when cases are "brought by" the FSLIC pursuant to federal appointment. The FSLIC argues that the key determination is whether its conservatorship arose from federal or state authority. We need not decide which statute of limitations applies when the FSLIC serves as conservator pursuant to state appointment, however. It is sufficient to hold that where the FSLIC is appointed conservator pursuant to federal authority the federal statute of limitations supersedes the applicable state statute and begins to run when the FSLIC acquires the right to bring an action—the moment it is appointed conservator.

Numerous courts have considered which statute of limitations ought to apply in

---

conferred upon it under subsection (b) of this section with respect to Federal associations....

Thus, subsection (A) provides that, if requested by the local, non-federal authority having the power to make such appointment, the FSLIC's services are "tendered to" that authority. By contrast, subsection (B) provides that the FHLBB may thrust the FSLIC's services upon the association with or without a local request, but imposes upon the FHLBB the burden of finding that any one of the grounds specified in section 1464(d)(6)(A) exists. Under either section, once the FSLIC has been appointed conservator, it possesses identical "powers and duties": specifically, those enumerated in 12 U.S.C. § 1729(b).

**6.** Although *Fidelity Financial* involved section 1729(c)(2) rather than section 1729(c)(1)(B), both sections contain identical language giving the FHLBB "exclusive power and jurisdiction" to name FSLIC receiver.

**7.** We know of no cases invoking the corporate/receiver dichotomy to hold that the state statute of limitations ought to control. See, e.g., *FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1108 n. 6 (1st Cir.1986) (distinguishing between FDIC/corporate and FDIC/receiver for purposes of analyzing applicability of equitable estoppel to government agency); *FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.1984) (government exception to doctrine of equitable estoppel not available to FDIC acting as private liquidating agent), *reh'g en banc denied*, 768 F.2d 1353

(11th Cir.1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 367 (7th Cir.) (FDIC acting as receiver is not a federal agency for purposes of establishing federal jurisdiction pursuant to 12 U.S.C. § 1819, provision analogous to 12 U.S.C. 1730(k)(1)), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *FDIC v. Ashley*, 585 F.2d 157, 160–64 (6th Cir. 1978) (same); *FDIC v. Godshall*, 558 F.2d 220, 223 (4th Cir.1977) (federal jurisdiction exists in suit brought by FDIC as corporate insurer, as distinct from state-appointed receiver); *FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir.1971) (FDIC as receiver is distinct from government for purposes of applying former testimony exception to hearsay rule); *British Columbia Investment Co. v. FDIC*, 420 F.Supp. 1217 (S.D.Cal. 1976) (acts of FDIC in its corporate capacity should not be imputed to FDIC as receiver for purposes of asserting equitable defenses). We note further that *Citizens Bank & Trust* and *Ashley* involved state-appointed receivers, rather than receivers appointed pursuant to federal law.

These cases firmly establish that courts should recognize the dual nature of the FSLIC when there is a warrant for doing so. In view of the statutory language noted above and the recent *Fidelity Financial* case, however, there is no warrant for doing so here. The FSLIC as receiver may very well "stand in the shoes" of the insolvent bank for some purposes. It nonetheless remains a federal agency subject to 28 U.S.C. § 2415(b).

actions by the FSLIC or FDIC, although none have done so in precisely this context. Nevertheless, these cases provide further support for our conclusion. For example, in *FDIC v. Bird*, 516 F.Supp. 647 (D.P.R. 1981), the court held that the federal statute of limitations applied in a case brought by the FDIC in its corporate capacity. The *Bird* court further held that the the statute began to run from the date the cause of action was acquired by the FDIC, and equated that acquisition with the date of its appointment as receiver. *Id.* at 650. *See also FSLIC v. Williams*, 599 F.Supp. 1184, 1193 (D.Md.1984) (federal statute of limitations ran from date FSLIC had notice of claims—upon its appointment as receiver); *FDIC v. Buttram*, 590 F.Supp. 251, 254 (N.D.Ala.1984) (federal statute of limitations ran from the date FDIC had authority to sue—the date of its appointment as receiver). Similarly, in *FDIC v. Hudson*, 673 F.Supp. 1039 (D.Kan.1987), decided in November, 1987, the FDIC was appointed receiver of an insolvent bank by the appropriate state authority. After FDIC/receiver sold the bank's assets to FDIC/corporate, FDIC/corporate filed suit against a former member of the bank's board of directors, alleging breach of fiduciary duty and negligence. *Id.* at 1040. The court held that 28 U.S.C. section 2415(b) set forth the applicable statute of limitations, stating, "the FDIC/receiver's cause of action against the officers and directors did not accrue until the FDIC acquired the legal right to bring suit. This occurred on the day the FDIC accepted appointment as receiver...." *Id.* at 1041. Once again, the court did not differentiate between FDIC/receiver and FDIC/corporate for purposes of applying the federal statute of limitations. Finally, in *FDIC v. Haines Pipeline Construction, Inc.*, 617 F.Supp. 61, 62 (W.D.Okla.1985), the court held that the FDIC, suing in its capacity as a receiver for an insolvent bank, could invoke the federal statute of limitations set forth in 28 U.S.C. section 2415(b).

The defendant would have us distinguish these cases on the ground that the FSLIC is not the real party in interest in this lawsuit. He argues that the FSLIC serves as a mere conservator, as distinct from a receiver or corporate insurer. Indeed, Columbus is an ongoing concern, and any recovery arising out of this lawsuit will inure to the benefit of Columbus, not the FSLIC. And although Columbus has been found insolvent, as yet no claim has been made against the FSLIC's insurance fund. Thus, defendant argues, the FSLIC should be stripped of its status as a government agency for purposes of fixing the statute of limitations.

The defendant cites two cases on his behalf. First, in *United States v. Emons Indus., Inc.*, 406 F.Supp. 355 (S.D.N.Y. 1976), the court considered whether the three-year statute of limitations contained in 12 D.C.Code section 301(7), which sets forth the limitations period applicable to ordinary contract actions in the District of Columbia, ought to apply in an action brought by the Agency for International Development ("A.I.D.") to recover funds paid to defendant. The defendant claimed that it should, arguing that the United States was not the real party in interest, but a mere conduit for funds belonging to another entity. The court rejected this argument and applied the six-year limitation set forth in 28 U.S.C. section 2415(a) because any recovery would inure to the benefit of the United States, and thus "A.I.D. [was] not a plaintiff in name only." *Id.* at 358. The defendant argues that here, where the FSLIC allegedly is not the real party in interest, we ought to follow the reasoning of *Emons Industries* and apply the state statute of limitations. This argument fails, however. The court in *Emons Industries* reached the question of whether the A.I.D. was the real party in interest because 12 D.C.Code section 308 provides that 12 D.C.Code section 301 does not apply "to an action in which the United States is the real and not merely the nominal plaintiff." *Id.* Thus, the court only considered the identity of the real party in interest because section 308 instructed it to do so. Titles 12 and 28 of the U.S.Code contain no such command. Quite simply, *Emons Industries* concerns an entirely different statutory scheme.

Second, the Fourth Circuit in *Foremost Guaranty Corp. v. Community Savings & Loan, Inc.*, 826 F.2d 1383 (4th Cir.1987), affirmed the district court's denial of the defendant's motion to dismiss a complaint seeking rescission of certain contracts on grounds of sovereign immunity, holding that a state agency acting as receiver for a failed savings and loan was not the real party in interest in the litigation. *Id.* at 1386–88. The court noted that, as insurer of the savings and loan's deposits, the state agency's exposure could increase if the contracts were ultimately rescinded, but concluded that this exposure was too "indirect and collateral" to render it the real party in interest. *Id.* at 1388. The defendant's efforts to analogize *Foremost Guaranty* to the instant case fail, however. The Fourth Circuit only considered whether the state was the real party in interest because a well-developed body of law instructed it to do so when faced with a claim of sovereign immunity. *See, e.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). No such body of law exists here. The relevant portion of 28 U.S.C. section 2415(b) merely requires that the entity bringing the action be an "agency," not the real party in interest.

We are instead persuaded by the Fifth Circuit's December, 1987 decision in *FSLIC v. Dixon*, 835 F.2d 554 (5th Cir.1987). As in this case, in *Dixon* the FHLBB appointed the FSLIC as receiver for a troubled savings and loan, which then filed an action against the savings and loan's former officers and directors. In upholding the district court's entry of a preliminary injunction to prevent the dissipation of assets, the Fifth Circuit stated:

> This whole case is colored by the fact that FSLIC is representing and protecting the public interest. One defendant

tries to argue that because FSLIC has instituted this suit in its corporate capacity, it is not entitled to the solicitation which courts show to governmental agencies. This argument fails. The reason that FSLIC must take on a corporate form, and take control of the savings institution as a receiver *is* to protect the, public interest. Furthermore, "notwithstanding any other provision of law ... the [FSLIC] shall be deemed to be an agency of the United States within the meaning of section 451 U.S.C. of Title 28." 12 U.S.C. § 1730(k)(1). *There can be no doubt that FSLIC, in its corporate form or not, is a governmental agency in which the public interest is entrusted.*

*Id.* at 557–58 (emphasis added).

In view of the above, there is insufficient basis for departing from the language of 12 U.S.C. section 1730(k)(1)(A) and 28 U.S.C. sections 451 and 2415(b). Accordingly, we hold that the federal statute of limitations set forth in 28 U.S.C. section 2415(b) applies to the FSLIC's negligence claims. The defendant's motion to dismiss on this ground is denied.

### 5. *Defendant's Motion to Dismiss Plaintiff's Bankruptcy Claims.*

In the Bankruptcy Complaint, the plaintiff states claims for the nondischargeability of the defendant's debts incurred through false representation or actual fraud, pursuant to 11 U.S.C. section 523(a)(2)(A). The plaintiff further states claims for the nondischargeability of the defendant's debts for fraud and defalcations while acting in a fiduciary capacity, pursuant to 11 U.S.C. section 523(a)(4), and for willful and malicious injury, pursuant to 11 U.S.C. section 523(a)(6).[8] In his mo-

---

8. 11 U.S.C. section 523(a) provides in relevant part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ... [or]

tion to dismiss the Bankruptcy Complaint, the defendant repeats many of the arguments forwarded in the context of the FSLIC Complaint. To the extent that these arguments duplicate one another, the defendant's motion is granted in part and denied in part. The following discussion focuses on those aspects of the defendant's motion to dismiss that pertain solely to the Bankruptcy Complaint.

The defendant concedes that proof of actual fraud suffices to state a claim of nondischargeability of debt under section 523(a)(2)(A). The elements of fraud required for purposes of this section have been described as:

> ... (1) the debtor made the representations; (2) that at the time he knew they were false; (3) *that he made them with the intention and purpose of deceiving the creditor;* (4) that the creditor relied on such representations, and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975) (quoting *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967) (emphasis in original). These elements obviously track the common law fraud requirements enumerated above. The defendant revives his argument that the debtor must intend to cause injury to satisfy the third prong of the *Taylor* formulation. Once again, the defendant is mistaken. The plaintiff need not show an intent to injure; rather, the plaintiff need only show that the defendant intended to deceive.

██ Similarly, section 523(a)(6) does not require that the plaintiff prove that the defendant intended to inflict injury. Rather, the "willful and malicious" language of this section simply means an intentional act which causes injury. As the Ninth Circuit recently stated, "[w]hen a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to

injure." *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986).

Finally, even if the plaintiff were required to plead intent to injure to state a claim under sections 523(a)(2)(A) and (a)(6), this would not set forth grounds for dismissal of the plaintiff's claims under section 523(a)(4), which provides for the nondischargeability of debts incurred through defalcation while acting in a fiduciary capacity. Negligence or ignorant conduct can constitute defalcation. *See, e.g., In re Gonzales,* 22 B.R. 58, 59 (Bkrtcy.N.D.Cal. 1982); *In re Gagliano,* 44 B.R. 259, 261 (Bkrtcy.N.D.Ill.1984). Moreover, the defendant cannot credibly argue that he was not acting in a fiduciary capacity while with Columbus. The court therefore denies the defendant's motion to dismiss the Bankruptcy Complaint on these grounds, except where dismissal was granted with leave to amend in the corresponding portions of the FSLIC Complaint.

The defendant further argues that the Bankruptcy Complaint should be dismissed because it fails to allege that the defendant personally benefited in incurring the debt, as required by 11 U.S.C. sections 523(a)(2)(A), (4) and (6). In support of this requirement, the defendant cites *In re Banister,* 737 F.2d 225 (2d Cir.1984), *cert. denied,* 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 400 (1985). In *Banister,* the Second Circuit considered "whether a corporate officer who fails to disburse to a secured creditor proceeds from the sale of inventory in which the creditor has a secured interest incurs a debt that is nondischargeable in the personal bankruptcy of the officer." *Id.* at 225. The court concluded that the debt *was* dischargeable on two grounds. First, section 17(a)(2) of the Bankruptcy Act of 1898 (the "Former Act"), the predecessor of sections 523(a)(2) and (6), required the "willful and malicious conversion of the property of another" in order to render the debt nondischargeable. Under New York state law the agreements between the parties had merely given the

---

(6) for willful and malicious injury by the debtor to another entity or to the property of

another entity....

creditor priority; they did not impose upon the debtor the duty to segregate sale proceeds and hold those proceeds in trust for the creditor, and thus no conversion took place when the debtor failed to disburse the proceeds. *Id.* at 226–28. Second, section 17(a)(4) of the Former Act, the predecessor of section 523(a)(4), did not apply because there was no evidence that the defendant personally benefitted from his conduct, stating, "[s]ince [the defendant] neither diverted specific corporate funds expressly required to be held segregated for the creditor's benefit, ... nor personally benefitted from the use of general corporate funds, he did not commit any fraud or misappropriation in a fiduciary capacity within the meaning of section 17(a)(4)." *Id.* at 229 (citation omitted).

The plaintiff argues that *Banister* is inapposite because the opinion was based on old section 17(a)(4), and the new section 523(a)(4) no longer includes "misappropriation," the term focused on by the *Banister* court. As the above quotation demonstrates, however, *Banister* is not so easily distinguished; the court specifically states that personal benefit is a required element of nondischargeability for "fraud *or* misappropriation in a fiduciary capacity" under section 17(a)(4).

 *Banister* can be distinguished on other grounds, however. The decision partly rested on a finding that the agreements between the parties did not create a fiduciary relationship between them. *Id.* at 227–28. Thus, the court stopped short of holding that personal benefit was a prerequisite to a breach of fiduciary duty under section 17(a)(4). In the instant case, the defendant clearly owed to Columbus the duties of a fiduciary. *See In re Decker*, 36 B.R. 452, 456–58 (D.N.D.1983) (for purposes of satisfying section 523(a)(4), fiduciary relationship exists between corporate officer and/or director and the corporation itself); *In re Cowley*, 35 B.R. 526, 528–29 (Bkrtcy.D.Kan.1983) (in an action under 523(a)(4), a corporate officer is a fiduciary of the corporation). Several courts have held that under such circumstances the plaintiff need not show that the debtor derived personal benefit from his conduct. *See, e.g., In re Cowley, supra,* 35 B.R. at 529 ("[Defalcation] can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom"); *Matter of Folliard,* 10 B.R. 875, 877–78 (D.Md.1981) (in action under section 17(a)(4), no need to show personal benefit if breach of express trust by fiduciary is shown).

Moreover, the *Banister* court discussed the need to establish the debtor's personal benefit in the context of section 17(a)(4); nowhere does it suggest that this requirement applied to section 17(a)(2) as well. Indeed, authority exists for the proposition that, in an action to establish nondischargeability under section 17(a)(2) (or its successors, sections 523(a)(2)(A) and (6)), the plaintiff need not show that the debtor derived personal benefit. *See, e.g., In re Sobel,* 37 B.R. 780, 786 (Bkrtcy.E.D.N.Y. 1984) (benefits of fraud channeled to closely-held corporation, not to defendant; "[t]hat a corporation is the beneficiary does not make the fraud any less"); *In re Pirnie,* 16 B.R. 65, 66 (Bkrtcy.D.Mass.1981) ("Section 17(a)(2) applies even when a bankrupt fraudulently obtains property for a party other than himself."). As one court stated, "the debtor need not have obtained the money for himself in order for the debt to be nondischargeable.... The rule must rest on the common sense conclusion that a person will seldom go to the trouble of obtaining money by wrongful means unless the person realizes some benefit for himself, though the money actually goes to another." *In re Tom Woods Used Cars, Inc.,* 23 B.R. 563, 569 (Bkrtcy.E.D.Tenn. 1982) (action under section 523(a)(2)(A)). Accordingly, the court denies the defendant's motion to dismiss allegations of the plaintiff's Bankruptcy Complaint pertaining to sections 523(a)(2)(A), (4) and (6).

Finally, the Bankruptcy Complaint states two claims for nondischargeability based upon the defendants alleged intentional violation of the June 12, 1984 Supervisory Agreement with the FHLLB, pursuant to 11 U.S.C. sections 523(a)(4) and (6). The defendant mounts two objections. First, the defendant argues that the complaint

fails to provide specific details regarding his intent to injure Columbus. Once again, the defendant has misconstrued the intent element of fraud or willfulness. In addition, Federal Rule of Civil Procedure 9(b) specifically provides that intent may be averred generally, and the plaintiff has done so.

■ Second, the defendant argues that Columbus (and therefore the plaintiff as its conservator) is not entitled to bring a private cause of action to establish that the defendant has nondischargeable debt for violating the 1984 Supervisory Agreement. The defendant argues that, under the guidelines set forth in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), no private cause of action should be implied because FSLIC regulations were not promulgated for the exclusive benefit of financial institutions such as Columbus. *See FSLIC v. Capozzi*, 653 F.Supp. 591, 600 (E.D.Mo.1987).

The plaintiff responds that its claims for nondischargeability for violations of the Supervisory Agreement do not depend upon a private right of action, and that the *Cort v. Ash* test is therefore inapplicable. Rather, it argues that its causes of action depend upon federal common law. Indeed, courts in this circuit have recognized a federal common law right of action in circumstances analagous to our own. *See, e.g., FSLIC v. Sajovich*, 642 F.Supp. 74, 77 (C.D.Cal. 1986); *First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128, 1132 (D.Hawaii 1983) ("the federal interest in uniform regulation of savings and loan associations supports recognition of a federal common law cause of action for breach of fiduciary duty"; savings and loan state-chartered but federally-insured). Similarly, Judge Orrick of this District recently recognized the right of a federally-chartered savings and loan to sue under federal common law its former officers, directors and employers for breach of fiduciary duty. *Eureka Federal Savings and Loan Assoc. v. Kidwell*, 672 F.Supp. 436 (N.D.Cal.1987). The plaintiff argues that its allegations that the defendant willfully violated the Supervisory Agreement amount to a charge of breach of fiduciary duty, just as in the above cases violations of banking regulations were regarded as fiduciary breach sufficient to give rise to a federal common law right of action.

Although the plaintiff here sues to establish the nondischargeability of debt, rather than for breach of fiduciary duty, the plaintiff's theory of nondischargeability is itself founded on an alleged breach of fiduciary duty. It is also worthy of note that the Bankruptcy Complaint is but an outgrowth of the defendant's response to the original FSLIC Complaint's allegations of fraud and breach of fiduciary duty. Accordingly, we follow *First Hawaiian, Sajovich* and *Eureka Federal*, recognize the viability of the plaintiff's cause of action under federal common law and deny the defendant's motion to dismiss the Bankruptcy Complaint.

In view of the above, the defendant's motion to dismiss or for definite statement is in large measure denied. In those few instances enumerated above in which we grant the defendant's motion, plaintiff is granted 30 days leave to amend the FSLIC and Bankruptcy Complaints.

IT IS SO ORDERED.