826 F.2d 1383
 FOREMOST GUARANTY CORPORATION, Plaintiff-Appellee,
v.
COMMUNITY SAVINGS & LOAN, INC., a Maryland Association,
Defendant-Appellant,
and
Philadelphia Savings Fund Society; Epic Mortgage, Inc., a
Delaware Corporation; Dominion Federal Savings & Loan
Association, a federal savings and loan association; First
National Bank of Maryland, a national banking corporation;
Silverado Banking Savings and Loan Association, Colorado
Corporation; Unity Loan and Building Company, Ohio, Defendants.
UNITED GUARANTY RESIDENTIAL INSURANCE OF IOWA, an Iowa
Corporation, Plaintiff- Appellee,
v.
COMMUNITY SAVINGS & LOAN, INC., a Maryland Association,
Defendant-Appellant,
and
Epic Mortgage, Inc., a Delaware Corporation; Dominion
Federal Savings & Loan Association, a federal savings and
loan association; First National Bank of Maryland, a
national banking corporation; Continental Federal Bank, a
federal savings bank; American Savings & Loan an Indiana
savings and loan association, individually and Behalf of
others similarly situated, Defendants.
 Nos. 86-1662, 86-1663.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 10, 1986.
Decided Aug. 31, 1987.
 
 1
 Dennis Michael Sweeney, Deputy Atty. Gen. (Stephen H. Sachs, Atty. Gen. of Maryland, Baltimore, Md., Alexander E. Bennett, Murray R. Garnick, Arnold & Porter, Washington, D.C., on brief), for defendant-appellant.
 
 
 2
 Edward Cyrus Winslow, III (James T. Williams, Jr., Mack Sperling, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., Irving P. Margulies, Randal D. Shields, Weiner, McCaffrey, Brodsky & Kaplan, P.C., Washington, D.C., on brief), for plaintiff-appellee.
 
 
 3
 Before WIDENER, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.
 
 
 4
 MAXWELL, District Judge.
 
 
 5
 Foremost Guaranty Corporation (Foremost) and United Guaranty Residential Insurance Company (UGI), two mortgage insurance companies, have filed civil actions each seeking Declaratory Judgment enabling the rescission of certain mortgage guaranty insurance policies and commitments which they had issued to EPIC Mortgage, Inc. (EMI), a subsidiary of Community Savings and Loan, Inc. (Community).
 
 
 6
 The Maryland Deposit Insurance Fund Corporation (MDIF), as receiver of Community, moved the district court to dismiss these civil actions on Eleventh Amendment grounds. The district court denied the motion, holding as follows:
 
 
 7
 MDIF occupies a bifurcated status: as insurer of Community's deposits, and as receiver of Community. In connection with these suits, MDIF is fulfilling its role as receiver. I find that such a proprietary capacity does not render it an arm or "alter ego" of the State so as to defeat diversity.
 
 
 8
 I would also find that the possibility that the Maryland treasury could be affected in that MDIF qua insurer has a claim against the assets of Community and a judgment may diminish those assets, does not constitute the direct depletion of the State treasury needed to invoke the Eleventh Amendment. Dyson v. Lavery, 417 F.Supp. 103, 108 (E.D.Va.1976).
 
 
 9
 Accordingly, it is hereby ordered that the motions to dismiss are DENIED.
 
 
 10
 MDIF appeals, arguing multiple reasons for reversing the district court's decision. The substantive issue presented in this appeal is whether a Declaratory Judgment action brought against Community is barred under the Eleventh Amendment because MDIF, a state agency, has been appointed its receiver.
 
 
 11
 Inasmuch as we hold that MDIF, while functioning in its limited capacity as a receiver, a legal representative for Community, does not obtain immunity from suit in federal courts under the Eleventh Amendment, we affirm the decision below.
 
 I.
 
 12
 This case arises out of the extensive litigation, concerning mortgage insurance policies associated with the State of Maryland's 1985 savings and loan crisis, which has been consolidated by the Judicial Panel on Multi-District Litigation for further proceedings in the Eastern District of Virginia.
 
 
 13
 Before May 1985, 102 savings and loan associations chartered in Maryland were insured by the Maryland Savings Share Insurance Corporation (MSSIC), a private non-profit corporation which derived its capital from member institutions whose deposits it insured. A series of depositor runs on several Maryland savings and loan institutions touched off a financial crisis which prompted the Governor of the State of Maryland to issue an Executive Order on May 14, 1985, suspending withdrawals from MSSIC-insured institutions and seeking emergency legislation. The Maryland General Assembly enacted extensive emergency legislation in May 1985 that, among other things, established MDIF effective June 1, 1985 and merged the functions of MSSIC into MDIF. See generally Chevy Chase Savings & Loan v. State, 306 Md. 384, 509 A.2d 670 (1986) (describing the 1985 savings and loan crisis).
 
 
 14
 MDIF is a non-stock, non-profit corporation and a state agency within the Maryland Department of Licensing and Regulation. Chevy Chase, 306 Md. at 393, 509 A.2d at 674-75. Virtually all the assets and liabilities of MSSIC were transferred to MDIF by the statutory merger. See 1985 Md.Laws Ch. 6 Sec. 4 (1st Sp.Sess.), as amended by 1986 Md.Laws Ch. 12 Sec. 2. MDIF was initially capitalized from Maryland's state general revenue fund in order to have sufficient funds to satisfy its insurance obligations to failed financial institutions.
 
 
 15
 Primarily MDIF was established as an insurer of member institutions, but it also was granted all the "rights, powers, duties, obligations, and functions" of MSSIC. See 1985 Md.Laws ch. 6, Sec. 4 (1st Sp.Sess.), as amended by 1986 Md.Laws, ch. 12, Sec. 2. By legislative permission the Maryland Deposit Insurance Fund director may institute proceedings for the appointment of a conservator or a receiver for any member association when he determines that it "is being operated in an unsafe and unsound manner, or that there is not a substantial likelihood that a major association will qualify for federal insurance and that it is in the public interest." Md.Fin.Inst.Code Ann. Sec. 10-117(c) (1986). See also Md.Fin.Inst.Code Ann. Sec. 9-701(b).
 
 FACTUAL BACKGROUND
 
 16
 The relationships of the entities involved as defendants in the case at bar are somewhat complex. Community, a Maryland savings and loan association, was a unit of a holding company which included dozens of affiliated companies, many of which were directly or indirectly involved in mortgage lending. Equity Programs Investment Corporation (EPIC) was another unit of the holding company that owned both Community and EMI. EPIC syndicated approximately 350 limited partnerships to purchase over 20,000 single family homes. EPIC financed these homes with loans originated by EMI. EMI, Community's subsidiary, engaged in the business of making residential mortgage loans. EMI obtained mortgage guaranty insurance on these loans from, among others, UGI and Foremost, and then assigned the loans to Community.
 
 
 17
 In August, 1985, when EMI was experiencing severe financial problems United rescinded all outstanding insurance coverage on the EPIC loans. United then filed a diversity action in the United States District Court for the Middle District of North Carolina seeking Declaratory Judgment that it was entitled to rescission of these insurance agreements because of fraud and misrepresentations in the insurance application process. The defendants are EMI, Community, and other financial institutions to which certain loans were assigned.
 
 
 18
 On September 5, 1985, the Circuit Court for Montgomery County, Maryland, appointed MDIF as conservator of Community, directing that MDIF "shall exercise all powers, rights and privileges of the officers, directors, and members of the Defendant Association [Community] and its subsidiaries, and shall conduct the operations of the Defendant Association and its subsidaries (sic)." Board of Savings & Loan Ass'n Comm'rs, et al. v. Community Savings & Loan, Inc., No. 9276 Civil (Cir.Ct., Montgomery County, Md., Sept. 5, 1985). MDIF was later appointed receiver of Community, after Foremost, too, had filed an action.
 
 
 19
 In November, 1985, Foremost filed its action in the Eastern District of Virginia, similarly seeking a Declaratory Judgment that it was entitled to rescission of its outstanding insurance coverage of EPIC loans due to fraud and misrepresentation. The defendants named in that action are the same as those in UGI's suit. In April, 1986, the Judicial Panel on Multi-District Litigation consolidated these two suits and a few others, all involving the rescission of private mortgage insurance issued to EMI, in the Eastern District of Virginia, with Judge Claude M. Hilton presiding. In re Epic Mortgage Insurance Coverage Litigation, No. 680 (J.P.M.D.L., April 11, 1986).
 
 PROCEDURAL BACKGROUND
 
 20
 Judge Hilton ruled that complete diversity was absent in Foremost's suit because MDIF, as receiver for Community, was both the real party in interest in the suit and an arm of the State of Maryland. Foremost responded by amending its complaint to include a federal RICO count against Community and EPIC.
 
 
 21
 Following consolidation of the cases, MDIF moved the district court to dismiss the UGI and Foremost claims as barred under the Eleventh Amendment. Judge Hilton denied the motions, ruling that MDIF's status as a receiver did not compel dismissal and that any possible effect on the Maryland treasury was not sufficiently direct so as to invoke Eleventh Amendment immunity. Subsequently, MDIF moved to amend Judge Hilton's order for purposes of certification for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). This motion was denied by the Court. This appeal followed.
 
 II.
 
 22
 Generally, an interlocutory appeal is not permitted from orders of district courts prior to the entry of final judgment. 28 U.S.C. Sec. 1291. Moreover, the district court has declined to certify its order for an interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). Inasmuch as final judgment has not been entered in this civil action and the district court has not certified its order for an interlocutory appeal, we may consider the issues raised and suggested here only if we find that the order of the district court is appealable under a narrow exception to the final judgment rule of Sec. 1291 articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under Cohen and its progeny any party may appeal from an interlocutory order under 28 U.S.C. Sec. 1291, if the order conclusively determines the issue in the trial court, resolves an important question independent of the subject matter of the litigation, is effectively unreviewable on appeal from final judgment or is so important that review should not wait upon final judgment, and presents a serious and unsettled question upon appeal. Bever v. Gilbertson, 724 F.2d 1083 (4th Cir.), cert. denied, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984). It is clear that this case falls within the collateral order exception to the usual rule against interlocutory appeals.
 
 III.
 The Eleventh Amendment provides that
 
 23
 [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 24
 The principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Article III of the Constitution. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98-99, 104 S.Ct. 900, 906-07, 79 L.Ed.2d 67 (1984) (quoting Ex parte State of New York, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921)).
 
 
 25
 In a civil action such as the one before this court it is not always clear whether the action is in fact a suit against the state. The Supreme Court noted at footnote 11 in Pennhurst that[t]he general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." Dugan v. Rank, 372 U.S. 609, 620 [83 S.Ct. 999, 1006, 10 L.Ed.2d 15] (1963) (citations omitted).
 
 
 26
 Thus, the threshold question in an Eleventh Amendment inquiry is whether the state itself is the real party in interest in the suit; however, it is recognized that the Eleventh Amendment may bar a lawsuit although the state is not named in the action. See, e.g., Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ford Motor Co. v. Indiana Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937).
 
 
 27
 Courts have applied a multifactor analysis to determine whether the state is the real party in interest in the litigation. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The nature of the entity under the state law provides "at least ... part" of the analysis, Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). A suit seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 28
 Traditionally, Federal courts have looked to state statutes and state case law to determine whether the state views the entity as an arm of the state. Clark v. Tarrant County Texas, 798 F.2d 736 (5th Cir.1986). The entity's degree of local autonomy, as opposed to centralized state control, is an important factor; whether the entity is concerned primarily with local, as opposed to state-wide problems, also enters the analysis. Id. Courts will consider whether the entity has authority to sue and be sued in its own name and whether it has the right to hold and use property. Some courts have placed particular importance on the state's degree of control over the entity and the fiscal autonomy of the entity. Fouche v. Jekyll Island-State Park Authority, 713 F.2d 1518 (11th Cir.1983). The inquiry is whether, in effect, the suit is a suit against the state. Jacintoport Corp. v. Greater Baton Rouge Port Commission, 762 F.2d 435 (5th Cir.1985).
 
 IV.
 
 29
 The Court does not, under the facts presented at this early stage in this civil action, view MDIF's limited status as Community's receiver as being sufficient to bring Community under the cloak of the Eleventh Amendment. No wrongdoing by the state agency is alleged; no relief from the state agency is requested. MDIF is before the Court solely as Community's receiver. In fact, MDIF's involvement in this litigation is predicated only on its status as Community's receiver, merely charged with overseeing the orderly liquidation and disposition of Community's assets.
 
 
 30
 The plaintiffs in the suit seek a declaration entitling the rescission of the mortgage insurance policies. Potentially, a ruling adverse to Community would diminish the worth of a valuable asset in Community's possession. This would leave its receiver, MDIF, with fewer assets to distribute in liquidation. Such declaration, however, would not restrain the State of Maryland from acting; it would not compel it to act. In addition, the RICO claim in Foremost's suit alleges no wrongdoing by MDIF and seeks no relief directly against it.
 
 
 31
 The Court recognizes that MDIF's role in the matters involved in this litigation can likely go far beyond the bounds of its limited capacity as Community's receiver. As earlier noted, MDIF has the capability of being the insurer of the savings and loan deposits. To such extent, if any, that Foremost or UGI will be entitled to the rescission of certain mortgage guaranty insurance policies, the exposure of MDIF as a deposit insurer increases. However, the Court views such potential liability which may be imposed upon MDIF, as a result of this litigation, as presently falling into the category of indirect and collateral liability. Whether a discharge of that indirect and collateral liability will require the disbursement of appropriated funds must now be recognized as speculative and conjectural.
 
 
 32
 Our conclusion is not in conflict with our holding in John Hanson Savings & Loan v. Maryland, 812 F.2d 1401 (4th Cir.1987) (per curiam unpublished). In John Hanson, we held that sovereign immunity protected MDIF from suit by two savings and loan associations seeking redemption of certificates of deposit representing their capital contributions to MDIF's Central Insurance Fund. Had the plaintiffs been allowed to proceed in that case and had prevailed, the judgment would have operated directly to require the disbursement of public funds. These circumstances clearly invoke the bar of the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 33
 The fact that MDIF was held to be immune from suit in the John Hanson case, however, does not require a similar conclusion here. Whether the Eleventh Amendment bars suit against a state agency depends upon the "essential nature and effect of the proceeding." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The identity of the agency is not necessarily determinative; a court must consider the relief sought in the particular proceeding and the capacity in which the defendants are sued before it can resolve the Eleventh Amendment bar question. Compare id. 323 U.S. at 463-64, 65 S.Ct. at 350-51 with Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).
 
 
 34
 In this case where MDIF is sued in its capacity as conservator of Community Savings and Loan, MDIF's administration of public funds is not implicated. Should the plaintiffs in this case prevail in their claim, the value of Community's assets may be somewhat diminished. If it is, MDIF's exposure as insurer of Community's deposits may be increased, but that effect would be completely indirect and collateral. The plaintiffs in this action make no claim against MDIF as insurer; they seek only equitable adjudication of their own potential liabilities to Community. Prosecution of these claims has no more direct or immediate effect upon MDIF's potential liabilities as insurer of the deposits than the assertion and prosecution of the claim of any creditor of Community.
 
 
 35
 Potential, speculative, indirect and collateral impact upon public funds does not suffice to trigger the bar of the Eleventh Amendment. This proceeding does not implicate MDIF's potential liabilities as insurer of Community's deposits any more than would have been the case if another had been conservator of Community's assets and MDIF had not been a party to this proceeding in any capacity.
 
 V.
 
 36
 In conclusion, because an ultimate judgment would not interfere with the public administration, we hold that Eleventh Amendment immunity does not require that these actions against Community Savings and Loan, Inc., be dismissed merely because MDIF, a state agency, is before the Court in its representative capacity as Community's receiver.
 
 
 37
 Accordingly, the order of the district court is AFFIRMED.