**GENERAL RAILWAY SIGNAL COMPANY, A UNIT OF GENERAL SIGNAL CORPORATION, a New York corporation, Plaintiff,**

v.

**James P. CORCORAN, Superintendent of Insurance of the State of New York, as Liquidator for American Fidelity Fire Insurance Company, and Susan S. Engeleiter, Administrator of the United States Small Business Administration, Defendants.**

No. 89 C 9360.

United States District Court,
N.D. Illinois, E.D.

Oct. 1, 1990.

Martin M. Ruken, Stuart D. Kenney, Allan Lapidus, Vedder Price Kaufman & Kamnholz, Chicago, Ill., for plaintiff.

Linda A. Wawzenski, Asst. U.S. Atty., William I. Goldberg, Lori A. Goldstein, Michael A. Berman, Holleb & Coff, John H. Ward, Much, Shelist, Freed, Denenberg, Ament & Eiger, PC, Chicago, Ill. (David Fishman, Small Business Admin., Washington, D.C., of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is a statutory interpleader action brought to resolve conflicting claims of ownership over a judgment entered against the stakeholder in previous litigation. Pending are a motion to dismiss, a motion to intervene and cross-motions for summary judgment.

### II. FACTS

Except where otherwise indicated, the underlying facts are not in dispute for purposes of the pending motions. American Fidelity Fire Insurance ("AFFI") was a surety on two performance bonds given by Transit Systems Technology, Inc. ("Transtec") in favor of Orange County Transit District, a California public transit agency, and on one performance bond given by Transtec in favor of Jamaica Buses, Inc., a private bus company in Jamaica, New York. The United States Small Business Administration ("SBA") issued Surety Bond Guarantee Agreements in connection with those performance bonds. The Guarantee Agreements provide that AFFI has the obligation to pursue all possible sources of recovery and that the SBA is entitled to a pro rata share of the net proceeds of any such recovery. Transtec defaulted on its contracts, and AFFI paid $803,500 on its performance bonds. Pursuant to the Surety Bond Guarantee Agreements, the SBA paid $732,872.28 to AFFI.

In 1984, AFFI brought an action in the Circuit Court of Cook County, Illinois, against General Railway Signal Company ("GRS"), a subsidiary of General Signal Corporation ("GSC"), alleging that GRS had breached an independent obligation to perform the Orange County and Jamaica contracts, causing AFFI to pay out on its bonds. Judgment was granted in favor of AFFI in the amount of $683,500 in February, 1987. GRS pursued the available appeals but was unsuccessful in challenging the judgment. *See American Fidelity Fire Ins. Co. v. General Railway Signal Co.,* 184 Ill.App.3d 601, 540 N.E.2d 557, 132 Ill.Dec. 817 (1st Dist.), *app. denied,* 127 Ill.2d 611, 545 N.E.2d 104, 136 Ill.Dec. 580 (1989).

Meanwhile, in 1985, AFFI became insolvent and liquidation proceedings commenced in the State of New York. James S. Corcoran, the Superintendent of Insurance of the State of New York, was named liquidator of AFFI in an order entered by

the Supreme Court of the State of New York, County of Nassau, pursuant to the Uniform Insurers Liquidation Act as adopted by New York. On November 21, 1989, an order was entered in the Illinois proceedings substituting the Superintendent as plaintiff. At that time, a total of $1,068,785.35 was due on the judgment against GRS.

On December 31, 1989, the SBA notified GRS that it was making a claim to the proceeds of the Illinois judgment as reimbursement for its payments to AFFI pursuant to the Surety Bond Guarantee Agreements. The SBA asserted that if GRS paid the amounts to AFFI, GRS might still be directly liable to the SBA.[1]

Claiming that it was subject to multiple liability on the same funds, GRS filed this interpleader action on December 19, 1989, pursuant to 28 U.S.C. § 1335 and posted a bond with the Clerk of Court in the amount of $1,070,000. Also on December 19, 1989, pursuant to 28 U.S.C. § 2361, this Court entered an ex parte temporary restraining order enjoining the Superintendent from attempting to collect the Illinois judgment.

The Superintendent subsequently moved this Court to dismiss the interpleader action. The Superintendent raised several grounds, including that diversity of citizenship was lacking because the Administrator of the SBA is not a citizen of any state, and that the proceedings in this court violate an order entered by the Supreme Court of New York enjoining all persons from bringing suit against the Superintendent as liquidator of AFFI. The Superintendent also moved to vacate the temporary restraining order and to require GRS to deposit cash, rather than a bond, with the Clerk of Court. The Court denied both of the Superintendent's motions in a Memorandum Opinion and Order entered on March 21, 1990. *General Railway Signal Co. v. Corcoran*, 735 F.Supp. 265 (N.D.Ill.1990). That order is now the subject of an appeal by the Superintendent. Proceedings in this Court have not been stayed pending the appeal.

Currently pending are four additional motions which have been filed during the pendency of the Superintendent's appeal. The Superintendent has filed a supplemental motion to dismiss the action, arguing that there is no diversity of citizenship because the Superintendent is not a citizen of any state for diversity purposes and that the action is barred by the Eleventh Amendment to the United States Constitution. The Superintendent has also filed a motion for summary judgment, arguing that the Court should abstain in deference to the New York liquidation proceedings. The Administrator of the SBA has filed a motion for summary judgment, arguing that the SBA is entitled to the proceeds of the Illinois judgment. Finally, a motion to intervene has been filed by the law firm of Antonow & Fink, which asserts a right to the proceeds of the judgment pursuant to an attorney's lien arising from services which Antonow & Fink provided to AFFI.

### III. DIVERSITY JURISDICTION AND SOVEREIGN IMMUNITY

Pursuant to 28 U.S.C. § 1335(a), the Court has jurisdiction over this interpleader action if there are "[t]wo or more adverse claimants, of diverse citizenship as defined in [28 U.S.C. § 1332]." The stakeholder in this case alleges that the claimants are "citizens of different states," and are thus diverse as provided by 28 U.S.C. § 1332(a)(1).

For the purpose of determining diversity of citizenship, a state is not a "citizen of a state." *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973); *State Highway Comm'n v. Utah Construction Co.*, 278 U.S. 194, 200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1928). Accordingly, where a state is a party in a diversity action, or a

---

1. The letter from the SBA to GRS stated, in part: [W]e wish to put you on notice that any representatives of a person or an estate paying any part of a debt of the person or estate before paying the claim of the government is liable for that payment to the extent of the payment for unpaid claims of the government. Therefore, General Railways Signal could be liable for any funds paid out which are in fact owing to the United States.

claimant in a § 1335 interpleader action, diversity of citizenship is not present and the case must be dismissed. *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 250 (1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). The same is true where a party or claimant is a state official and the state is the real party in interest. *State Highway,* 278 U.S. at 199-200, 49 S.Ct. at 106; *Adden v. Middlebrooks,* 688 F.2d 1147, 1153-54 (7th Cir. 1982). The Superintendent contends that the state is the real party in interest[2] and that diversity of citizenship is therefore lacking.

■ The Superintendent also argues that he is entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution. He contends that because he is an arm of the State, he may not be sued in federal court. Whether a state official or agency is entitled to sovereign immunity depends on whether the state is the real party in interest. *Oyler v. National Guard Association,* 743 F.2d 545, 554 n. 9 (7th Cir.1984). The analysis is the same as it is for determining whether the state is the real party in interest for the purpose of determining diversity jurisdiction. *See Adden,* 688 F.2d at 1154; *Skandia America Reinsurance Corp. v. Schenck,* 441 F.Supp. 715, 722 (S.D.N.Y.1977). Accordingly, the Court shall combine its discussions of the issues of diversity jurisdiction and sovereign immunity.

In determining whether the state is a real party in interest, courts have examined a number of factors: whether any judgment would be paid out of the state treasury, *Jensen v. State Board of Tax Commissioners,* 763 F.2d 272, 276 (7th Cir. 1985); *Adden,* 688 F.2d at 1153; whether a judgment would interfere with public administration, *Jensen,* 763 F.2d at 276; whether a judgment would have the effect of forbidding or compelling the government to act, *id.* at 276; whether the named party is performing a normal governmental func-

tion, *Adden,* 688 F.2d at 1153; whether the party has the power to sue and be sued in its own name, *id.* at 1153; whether there is any legislative provision that the party performs an essential governmental function, *id.;* whether the party has the power to buy or sell property in its own name, *id.;* and whether the party is accorded independent status under state law, *id.*

■ No party has called the Court's attention to any case which considers whether a state insurance official is considered to be the state itself for purposes of diversity jurisdiction. The Court's research, however, has revealed a number of cases which address this issue in various contexts. Examination of those cases reveals a clear pattern: when a state officer or agency is a party in its capacity as liquidator or receiver, the state is not considered to be the real party in interest. *See Finkielstain v. Seidel,* 857 F.2d 893 (2d Cir.1988) (Maryland Deposit Insurance Fund Corp., rather than insurance company, was real party in interest where it was sued in its capacity as receiver, and it was not entitled to sovereign immunity); *Foremost Guaranty Corp. v. Community Savings & Loan, Inc.,* 826 F.2d 1383 (4th Cir. 1987) (Maryland Deposit Insurance Fund Corp. was not entitled to sovereign immunity where it was sued in its capacity as receiver for savings and loan); *Excess and Casualty Reinsurance Ass'n v. Insurance Commissioner of State of California,* 656 F.2d 491 (9th Cir.1981) (in statutory interpleader action where one claimant was the Florida Insurance Department in its capacity as liquidator of an insurance company, the Department did not have sovereign immunity); *Geeslin v. Merriman,* 527 F.2d 452 (6th Cir.1975) (dismissal of suit brought by insurance company liquidator for lack of diversity jurisdiction was erroneous; state had not been shown to be real party in interest); *Skandia, supra,* 441 F.Supp. 715 (interpleader actions where one claimant

---

**2.** As opposed to AFFI, there is no dispute that the Superintendent is the real party in interest. *See Navarro Savings Association v. Lee,* 446 U.S. 458, 464, 100 S.Ct. 1779, 1783, 64 L.Ed.2d 425 (1980) ("a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others").

was the New York Superintendent of Insurance were not barred by diversity requirement or sovereign immunity); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia,* 311 F.Supp. 149, 157 (S.D.N.Y. 1970) (appointment by state of receiver for insurance company and presence of state as nominal party did not entitle state to sovereign immunity in interpleader action).

The courts in these cases reasoned that the litigation would not directly affect the state treasury, *Finkielstain,* 857 F.2d at 895–96; *Foremost,* 826 F.2d at 1388; *Excess,* 656 F.2d at 497; *Skandia,* 441 F.Supp. at 722; that no wrongdoing was alleged by the agency itself nor was any relief sought from the agency itself, *Foremost,* 826 F.2d at 1387; that the relief sought would not restrain the state from acting or compel it to act, *Foremost,* 826 F.2d at 1387; *Excess,* 656 F.2d at 497; and that the agency was involved in the case only because of its status as a receiver, *Foremost,* 826 F.2d at 1387. These courts also noted that the state did not become the real party in interest even though the litigation may implicate a genuine state interest in protecting the general welfare of its citizens. *Excess,* 656 F.2d at 498; *Skandia,* 441 F.Supp. at 722.[3]

In contrast, in those cases which have found states to be the real parties in interest, the insurance commissioners were parties not in their capacity as receivers, but rather as state agencies or officials directly asserting significant state interests. *See, e.g., Levinson v. Continental Insurance Services, Inc.,* 655 F.Supp. 275 (D.Del.1987) (remanding to state court for lack of diversity jurisdiction a case brought by Delaware Insurance Commissioner to invalidate agreement reached by predecessor); *Gunter v. AGO International,* 533 F.Supp. 86, 88 (N.D.Fla.1981) (remanding case for lack of diversity where commissioner had sued to enjoin violation of state law); *National Market Reports, Inc. v. Brown,* 443

F.Supp. 1301, 1305 (S.D.W.Va.1978) (dismissing case brought against West Virginia Insurance Commissioner to enjoin enforcement of state ordinance).

The Court agrees with this body of case law that where the state insurance officer is a party only because of his status as receiver or liquidator of an insurance company, the state is not the real party in interest. Because the Superintendent appears in this case solely as the liquidator of AFFI's estate, his supplemental motion to dismiss on the basis of lack of diversity and sovereign immunity is denied.

## IV. ABSTENTION

■ The Superintendent has filed a motion for summary judgment on the ground of abstention, requesting that the Court dismiss this case in deference to the liquidation proceedings in New York. He argues that abstention is proper under the various abstention doctrines set out in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). If any abstention doctrine is applicable in this case, it is that of *Burford* rather than *Younger* or *Colorado River.* Although some courts have found abstention appropriate in cases involving state insurance liquidation proceedings based on *Younger* or *Colorado River,* those courts have done so only after finding that abstention was appropriate under *Burford. See, e.g., Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980); *Aims Enterprises, Inc. v. Muir,* 609 F.Supp. 257, 259–262 (M.D.Pa. 1985). Others have found *Younger* and *Colorado River* inapplicable even though *Burford* was applicable. *See, e.g., Law Enforcement Insurance Co. v. Corcoran,* 807 F.2d 38, 43–44 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95

---

**3.** Other courts have dismissed actions involving state insurance officials acting as receivers for insolvent insurance companies on abstention grounds after noting the existence of diversity jurisdiction, without finding it necessary to explore whether there was actual diversity of citizenship. *See, e.g., Lac D'Amiante du Quebec v. American Home Assurance Co.,* 864 F.2d 1033, 1034 (3d Cir.1988); *Law Enforcement Insurance Co. v. Corcoran,* 807 F.2d 38, 40 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987).

L.Ed.2d 503 (1987). *See also Lac D'Ami-ante du Quebec v. American Home Assur-ance Co.,* 864 F.2d 1033 (3rd Cir.1988) (not reaching *Colorado River* because absten-tion appropriate under *Burford* anyway). This Court has not, however, located any precedents finding *Burford* inapplicable but finding *Younger* or *Colorado River* applicable. The *Burford* analysis most closely describes this case; if abstention is not appropriate under *Burford,* it is not appropriate under *Younger* or *Colorado River.* The Court will therefore consider solely the *Burford* doctrine.

■ *Burford* requires a federal court to dismiss the case where the state has estab-lished a complex regulatory scheme and exercise of federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. A federal court should abstain if the state law issue is complex, the state court has a special expertise on the issue, and there is a need for coherent state doctrine in the area. *Ryan v. State Board of Elections,* 661 F.2d 1130, 1135 (7th Cir.1981). How-ever, *Burford* abstention applies "only if federal review of a difficult question of state law would disrupt state efforts to establish a coherent policy respecting a matter whose importance transcends the result in the case under consideration." *Evans v. City of Chicago,* 689 F.2d 1286, 1295 (7th Cir.1982), *overruled on other grounds,* 873 F.2d 1007 (7th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990).

■ The requirements of *Burford* ab-stention have often been found to be met where a state official acting as receiver for an insolvent insurance company is a defen-dant in a federal lawsuit brought by a creditor of the company. *See, e.g., Lac D'Amiante,* 864 F.2d at 1048; *Law En-forcement,* 807 F.2d at 43–44 (2d Cir.1986); *Aims Enterprises,* 609 F.Supp. at 259–262 (M.D.Pa.1985).[4] Similarly, courts have ab-stained from deciding lawsuits filed by state officials in state courts to recover assets on behalf of insolvent insurance companies when those cases have been re-moved to federal court. *See, e.g., Grimes v. Crown Life Insurance Co.,* 857 F.2d 699, 706 (10th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989); *Corcoran v. Ardra Insurance Co.,* 842 F.2d 31 (2d Cir.1988); *Corcoran v. Universal Reinsurance Corp.,* 713 F.Supp. 77 (S.D.N.Y.1989). *See also Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980) (abstaining from federal lawsuit filed to challenge action of liquidator after liquidator had sought state court approval of his action); *Cash Cur-rency Exchange, Inc. v. Shine,* 762 F.2d 542, 556 (7th Cir.) (approving of *Levy*), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985).

The question next arises whether this case is governed by the same principles or rather is sufficiently different from those cases that *Burford* abstention is not war-ranted. One difference emphasized by GRS and the SBA is that the federal inter-pleader action is the only forum in which the rights of all parties can be protected. The Superintendent responds that all par-ties' rights can indeed be protected, point-ing out that agencies of the United States have the opportunity to assert a claim in the context of a state insurance company liquidation proceeding. *See, e.g., State of Idaho ex rel. Soward v. United States,* 858 F.2d 445 (9th Cir.1988) (Internal Revenue Service submitted claims in liquidation pro-ceeding), *cert. denied,* — U.S. ——, 109 S.Ct. 2063, 104 L.Ed.2d 628 (1989).[5] GRS responds that it is still subject to the SBA's claim that GRS owes the disputed amount directly to the SBA even if GRS turns the

---

**4.** *See also Brown v. Link Belt Division,* 666 F.2d 110 (5th Cir.1982) (abstaining without specify-ing the abstention doctrine); *Independent Petro-chemical Corp. v. Aetna Casualty and Surety Co.,* 672 F.Supp. 1, 5–6 (D.D.C.1986) (same); *Metro-politan Life,* 572 F.Supp. 460, 472–73 (W.D.Wis. 1983) (abstaining from claim that actions taken

in liquidation proceeding were unconstitution-al).

**5.** The Superintendent also submits, in support of this point, an undated slip opinion in *Fabe v. United States Department of Treasury,* No. C–2–88–778 (S.D. Ohio).

money over to the Superintendent. No party has submitted any authority which tends to show whether the state liquidation proceedings can protect the rights of all parties. The Court therefore leaves this question unanswered, but will consider this concern in its analysis.

GRS also contends that abstention is inappropriate here because this case involves a simple issue of federal law. The cases which have addressed abstention in the face of state liquidation proceedings have treated the existence of a federal, rather than state, issue as important but not determinative. *See, e.g., Levy*, 635 F.2d at 964 (existence of federal issue did not preclude abstention where the federal issue was almost identical to a state claim for breach of contract and exercise of federal jurisdiction would significantly disrupt liquidation proceedings).[6] In this case, the issue on the merits is whether the SBA is entitled to collect from GRS the amount which the SBA claims on the judgment before GRS pays the judgment to the Superintendent. This is not an issue of how the assets of AFFI are to be distributed, but rather an issue of whether the portion of the judgment claimed by the SBA may be considered an asset of AFFI in the first place. In its motion for summary judgment, the SBA relies on federal statutory law and common law principles of subrogation and equitable ownership. The Superintendent opposes the SBA's motion on the grounds that there are disputed issues of material fact, that the SBA has no claim against GRS itself, and that the SBA has no claim to the judgment until it is collect-

ed by the Superintendent. The claims and defenses raised in connection with the motion to dismiss thus raise matters which are of federal, rather than state, concern.

Another factor that distinguishes this case from the typical abstention cases is that there is no claim against the existing estate of AFFI. Indeed, this is not even a case where the liquidator is attempting to recover assets that will be distributed to AFFI's creditors; the Superintendent does not dispute that the SBA will eventually be entitled to its pro rata share of the net proceeds.[7] Some courts have abstained in circumstances where the liquidator is attempting to recover assets for the estate rather than to avoid losing assets, for the reason that the liquidator's collection of assets is an important aspect of the liquidation proceedings and affects the amount available for distribution to creditors. *See, e.g., Ardra*, 842 F.2d at 37. In this case, however, the lack of any substantial dispute that the SBA is eventually entitled to its claim diminishes any effect that the exercise of federal jurisdiction would have on the liquidation proceedings.

This case thus differs from the typical case in which abstention is warranted in several ways, including the uncertainty as to whether the rights of all parties can be protected in any other proceeding, the presence of an issue of federal law, and the minimal intrusion on the state liquidation proceedings. Although any of these factors in themselves might not suffice to compel exercise of federal jurisdiction, their combination in one case makes abstention inappropriate.[8]

---

**6.** In *Levy*, the court refused to abstain with respect to a second issue because that issue was within the exclusive federal jurisdiction. *See also Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671, 676–77 (7th Cir.1979). The SBA in this case has not argued that the claims are within the exclusive federal jurisdiction.

**7.** *See, e.g.*, Superintendent's Memorandum in Response to SBA Motion for Summary Judgment at 3: "The Liquidator has never taken the position that it would not honor claims by the SBA under [paragraphs 8 and 9 of the Bond Guaranty Agreements], but it has always taken the position that its dealings with the SBA, as

well as with all other creditors, must be in the Liquidation Proceedings and governed by the Liquidation Order."

**8.** The Superintendent has contended that exercise of jurisdiction by this court improperly interferes with the New York court's injunction restraining proceedings against AFFI. The Superintendent might further argue that in light of the New York court's liquidation order, the New York court has *in rem* jurisdiction over the proceeds of the judgment and this Court may not interfere with that jurisdiction. *Cf. Blackhawk Heating & Plumbing Co.*, 530 F.2d 154, 157–59 (7th Cir.1976). Both of these arguments were disposed of in *In re Texas Turn–Key Operators, Inc.*, 70 B.R. 193, 195 (Bankr.S.D.Tex.1986):

This result finds support in *Equitable Life Assurance Society v. Porter-Englehart*, 867 F.2d 79 (1st Cir.1989). In that case, an insurance company brought an interpleader action alleging that the proceeds of a life insurance policy were subject to conflicting claims. The proceeds were claimed both by the first wife of the decedent, as trustee for her children, and by the decedent's second wife, who argued that the proceeds should go to the estate, of which she was the administratrix. The second wife, after losing in the trial court, argued that the court should have declined to hear the case in deference to the proceedings in the probate court. The court of appeals, rejecting this argument, stated:

> [S]ince life insurance policies must be paid directly to the designated beneficiary rather than distributed through the probate estate, a federal declaration concerning such proceeds in no way interferes with the work of the probate court. By asserting that the money should be paid to the estate so that the administratrix may determine who receives it, appellant begs the threshold question of the estate's entitlement.

867 F.2d at 83. Of course, the initial issue of whether, as in *Equitable*, the SBA is entitled to receive the proceeds directly rather than awaiting distribution through the liquidation proceedings is yet to be decided; it is the issue on the merits in this action. However, if the SBA is correct, then the reasoning of *Equitable* is equally applicable to this case.

For all of the above reasons, abstention is improper in this action and the Court must exercise its jurisdiction.

## V. MOTION TO INTERVENE

■ After this action was filed, and after the Court denied the Superintendent's motion to dismiss, the law firm of Antonow & Fink filed a motion to intervene. Antonow & Fink alleges that it performed work for AFFI in connection with the recovery of the judgment against GRS, and that it holds an attorney's lien in the amount of $46,675.62 against the proceeds for reimbursement of the costs of that work. GRS has since amended its interpleader complaint to name Antonow & Fink as a third claimant to the proceeds of the judgment.

The Superintendent opposes Antonow & Fink's motion on the ground that all unsecured creditors of AFFI are required, by order of the New York court, to submit their claims for resolution in the liquidation proceedings. Antonow & Fink responds that the claim it asserts is not so much against AFFI as against the proceeds of the judgment, which do not inure to the estate of AFFI until the amount owed to Antonow & Fink is deducted. In light of the Court's ruling with respect to abstention, the fund is before the Court for resolution of ownership issues. Sending Antonow & Fink to the liquidation court would thus be nonsensical.

The SBA opposes Antonow & Fink's motion on the ground that Antonow & Fink is no different than any creditor of AFFI— that "their entitlement to any funds is not based on a claim for these specific funds as is the interest of" the SBA. (SBA Mem. in Response at 2.) This argument overlooks the nature of the claim asserted by Antonow & Fink, which is that its attorney's lien does give it a right to these specific proceeds as opposed to a general claim against the assets of AFFI.

Rule 24 of the Federal Rules of Civil Procedure provides that an applicant is entitled to intervene as of right when it

---

It is well-settled under federal and New York state law that a state court is without power to restrain an in personam action before a federal court where the federal court has jurisdiction over the parties and the subject matter.... Furthermore, where the federal court is the first to acquire jurisdiction over the res, the state court is precluded from exercising its jurisdiction over the same res to impair the federal court's jurisdiction.... Although the New York liquidation proceeding was commenced prior to the bankruptcy filing of TTKO, the interpled funds were taken into the possession of this Court.... Accordingly, exclusive jurisdiction of the res is in [this] Court.

(Citations omitted.) Here, the proceeds of the judgment are not yet an asset of AFFI's estate, and it is this court, not the New York court, which has exercised jurisdiction over those proceeds by the acceptance of a bond which covers them.

"claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Because Antonow & Fink has a claim to the specific proceeds over which this Court has assumed jurisdiction, the requirements of Rule 24 are satisfied. Antonow & Fink's motion to intervene is therefore granted.

## VI. SBA'S MOTION FOR SUMMARY JUDGMENT

■ The SBA guaranteed two of the bonds at issue in this case to the extent of 80 percent and the third bond to the extent of 90 percent. In its motion for summary judgment, which is directed solely toward the Superintendent and not to Antonow & Fink, the SBA contends that it is now entitled to recover pro rata the salvage recovered by AFFI on each bond. In support of this contention, the SBA relies initially on the terms of paragraph 9 of the standard Surety Bond Guarantee Agreements which it entered into with AFFI:

> If any net amount (less deductible) is recovered by Surety from any other source after payment has been made [to the surety] by SBA, SBA is entitled to receive up to 90 percent of said net amount within 90 days of actual receipt by the Surety.

The Superintendent, relying on the language of this provision, contends that the SBA's rights in the proceeds do not vest until the Superintendent has received the proceeds. The SBA, in order to prevail, must show that despite the language of the agreements, the SBA is entitled to the proceeds before they have been collected by the surety.

In support of this position, the government relies on *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). In *Pearlman,* a construction company had entered into a construction contract with the United States and had obtained surety bonds. The construction contract authorized the government to retain a portion of the monthly amounts due to the contractor until final completion and acceptance of the work. The contractor failed to complete the work, and the surety expended money to discharge debts of the contractor for labor and materials. The government turned over to the trustee of the contractor the amounts it had withheld pursuant to the contract. The surety then brought suit, claiming that those funds had vested in the surety and that the trustee had no right to them.

The Supreme Court agreed with the surety. The Court stressed that determination of the ownership of the funds was not governed by the priority rules of the Bankruptcy Act:

> Ownership of property rights before bankruptcy is one thing; priority of distribution in bankruptcy of property that has passed unencumbered into a bankrupt's estate is quite another. Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee. The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors.

371 U.S. at 135–36, 83 S.Ct. at 234. The Court then determined that the surety, under common law rules of subrogation, had an equitable right to the funds. Accordingly, those funds never became part of the bankruptcy estate, and the surety was entitled to them. *Id.* at 136–42, 83 S.Ct. at 234–37.

This case is governed by the same principle. As did the surety in *Pearlman,* the SBA has paid out on a guaranty agreement upon the default of a contractor and has become subrogated to the rights of the entity on behalf of which it paid. Following the reasoning of *Pearlman,* the SBA became the equitable owner of AFFI's rights against GRS. Accordingly, the proceeds do not become part of AFFI's estate, but may be collected directly by the SBA.

The Superintendent makes several responses to the SBA's argument, but none of those responses stand up to scrutiny. The Superintendent first argues that the SBA's position that it has a claim against the Superintendent destroys the basis for this interpleader action, because an interpleader action can only involve multiple claims against the stakeholder itself. This argument ignores the realities of interpleader lawsuits. Once the interpleader action is determined to be proper—as this one has been—the stakeholder is effectively dropped from the action and the claimants' rights in the property with respect to each other must be litigated. That is exactly what the SBA is doing here—it is pressing its claim that it, rather than the Superintendent, has a right to the proceeds. That argument is completely consistent with the nature of the interpleader action.

The Superintendent next argues that the SBA's motion for summary judgment belies an effort by the SBA to avoid presenting its claim in the liquidation proceedings in New York. Although the Court agrees that such an effort is apparent, it is not clear why the motion for summary judgment should be denied on that basis. The Court has already ruled above that the SBA need not present its claim in the liquidation proceedings. Furthermore, the SBA's desire to avoid immersion in those proceedings is perfectly understandable. It is entitled to the "net proceeds," and forcing it to wait until the proceeds have wended their way through the liquidation proceedings would undoubtedly raise the costs of collection and diminish the eventual amount collected—with no corresponding benefit to anyone but the attorneys who have managed to prolong the process.

Finally, the Superintendent argues that the exact amount to which the SBA is entitled is unknown at the present time. The Superintendent presents several points in support of this position. First is that interest is still accruing on the amount of the judgment. This fact does not preclude summary judgment; the Superintendent has not argued that this Court is any less competent than any other tribunal to sort out the interest and determine the amount

to which the SBA is entitled. Second, the Superintendent argues that the "net amount" of the proceeds is not yet known because collection expenses have not been fixed. Again, the Superintendent does not argue that this Court is not competent to determine the net amount.

Third, the Superintendent argues that the amount paid out by the SBA to AFFI has not been established. Although the SBA submitted documentation in support of this amount along with its motion for summary judgment, the Superintendent contends that it had not seen those documents previously and that they are not self-authenticating. However, the Superintendent has produced no evidence that contradicts the SBA's position, and the vague doubts he expresses cannot suffice to withstand the motion for summary judgment. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (when party moving for summary judgment has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

Fourth, the Superintendent argues that there may be an offsetting credit to reflect amounts owed by the SBA to the liquidator, apparently based on other SBA-guaranteed bonds issued by AFFI. However, the Superintendent does not affirm that such debts actually exist or what their amounts are. The Court cannot treat such a vague assertion of the possibility of other debts as sufficient to withstand a motion for summary judgment.

The Court concludes that the SBA is entitled to summary judgment against the Superintendent on the issue of its entitlement to the net amount of the proceeds. Remaining to be decided, of course, are the rights of Antonow & Fink and the exact sum to which the SBA is entitled.

## VII.  CONCLUSION

The Superintendent's motion to dismiss for lack of jurisdiction and motion for summary judgment on the ground of absten-

tion are denied. The motion of Antonow & Fink to intervene is granted. The SBA's motion for summary judgment is granted to the extent that the SBA claims that it, rather than the Superintendent, is entitled to the net proceeds of the judgment.