**GENERAL RAILWAY SIGNAL COMPANY, A Unit of General Signal Corporation, a New York corporation, Plaintiff,**

v.

**James P. CORCORAN, Superintendent of Insurance of the State of New York, as Liquidator for American Fidelity Fire Insurance Company, and Susan S. Engeleiter, Administrator of the United States Small Business Administration, Defendants.**

**No. 89 C 9360.**

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1992.

Allan E. Lapidus, Martin M. Ruken, Stuart D. Kenney, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for General Ry. Signal Co.

John Hester Ward, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, for Antonow & Fink.

William I. Goldberg, Lori Ann Goldstein, Michael Aaron Berman, Rebecca Lynn Kent, Holleb & Coff, Chicago, IL, for James P. Corcoran.

Linda A. Wawzenski, U.S. Atty.'s Office, Chicago, IL, for Susan S. Engeleiter.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, Circuit Judge, sitting by designation as District Judge.

## I. INTRODUCTION

This is a statutory interpleader action that, although over three years old, is still at its incipient stage. The issue that has occupied both this Court and the Court of Appeals for most of the protracted history of this case is whether the federal courts should abstain in deference to the New York state liquidation proceedings. In its opinion of October 1, 1990, this Court determined that abstention was inappropriate, finding that issues of federal law predominated, that the interpleader action would not significantly intrude upon the liquidation proceedings, and that it was unclear whether any other forum could adequately protect the rights of all parties. *See General Railway Signal Co. v. Corcoran*, 748 F.Supp. 639, 644–47 (N.D.Ill.1990).

As the case proceeded in this Court after the refusal to abstain, the Superintendent of Insurance of the State of New York (the "Superintendent"), as liquidator for American Fidelity Fire Insurance Company ("AFFI"), one claimant to the interpled fund,[1] prosecuted an interlocutory appeal from the preliminary injunction issued by the Court pursuant to 28 U.S.C. §§ 1335 & 2361. The Superintendent's appeal primarily challenged the Court's jurisdiction to issue a preliminary injunction pursuant to section 2361. The Court of Appeals vacated the Court's injunction but ultimately concluded that federal jurisdiction existed over the interpleader action. *See General Railway Signal Co. v. Corcoran*, 921 F.2d 700 (7th Cir.1991). In the course of its opinion, however, the Court of Appeals discussed at some length the abstention issue,

which this Court had already addressed in its October 1, 1990 opinion, but which was not the subject of the Superintendent's appeal. That discussion indicated that the Court of Appeals clearly believed that this Court should abstain. *Id.* at 707–10. Because the Court of Appeals explicitly disagreed with much of the reasoning of the Court's October 1, 1990 opinion, the Court followed the mandate of the Court of Appeals and reconsidered its abstention ruling, determining that it was required to abstain. *See General Railway Signal Co. v. Corcoran*, 757 F.Supp. 911 (N.D.Ill. 1991). Accordingly, the Court dismissed the interpleader action without prejudice. *Id.* at 915.

Upon dismissal of the case, General Railway Signal Company ("General Railway"), the interpleader plaintiff, filed a motion to release the interpleader bond and to discharge the surety. At the hearing on that motion, the United States Small Business Administration (the "SBA") indicated that it intended to appeal the Court's abstention decision and orally moved for a stay or an injunction pending appeal. The Court denied the SBA's oral motion, finding that the Court of Appeals' discussion of abstention in its initial opinion indicated that the SBA was unlikely to succeed on the merits of its appeal. Finding any injunctive relief improper, the Court determined that it had no choice but to release the interpleader bond and to dismiss the surety.[2] When that occurred, General Railway paid to the Superintendent the entire amount of the underlying state court judgment, and the Superintendent executed and delivered to General Railway a release of judgment.

The SBA then appealed this Court's January 25, 1991 judgment dismissing the case on the ground of abstention. The Court of Appeals subsequently vacated the Court's

---

1. The other claimants were the United States Small Business Administration (the "SBA") and Antonow & Fink. The SBA made a claim to the fund as reimbursement for payments made to AFFI pursuant to Surety Bond Guarantee Agreements. *See id.* at 641–42. Antonow & Fink intervened to assert an attorney's lien relating to legal services performed for AFFI in connection with the recovery of the underlying judgment. *See id.* at 647.

2. The Court delayed execution of its order releasing the bond and dismissing the surety for two full days in order to provide the SBA with the opportunity to request a stay from the Court of Appeals. The SBA did not pursue any relief from the Court of Appeals, however, and instead simply appealed this Court's abstention decision.

judgment and again remanded for consideration of the propriety of abstention. *See General Railway Signal Co. v. Engeleiter,* 969 F.2d 519 (7th Cir.1992). The Court of Appeals apparently adopted this course because it believed that the Court had "misapprehended the impact" of dicta addressing the abstention issue that was included in its earlier opinion. *Id.* at 520. The Court of Appeals conceded that the earlier panel had discussed, "extensively and perhaps too definitively, several aspects of *Burford*[3] abstention" that would require the attention of this Court on remand. *Id.* Acknowledging, "with the benefit of hindsight," that this discussion was "clearly counterproductive" because it had "conveyed to the district court the impression that the issue was foreclosed, at least as a practical matter, from further exploration," the Court of Appeals then explicitly stated "that the entire matter of *Burford* abstention is open for consideration by the district court." *Id.* at 521. In particular, the second panel stated that

> the comments in our earlier opinion about the relative importance of federal and state law issues were not intended to disapprove categorically the result reached by the district court. Nor were our remarks regarding the extent to which the interpleader action might interfere with state liquidation proceedings meant to assess this issue definitively. Moreover, all other aspects of the abstention issue are similarly open.

*Id.* Therefore, consistent with the Court of Appeals' suggestion, the Court has accepted further briefing on the abstention issue and now considers and adjudicates that issue *de novo.*[4]

---

**3.** *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**4.** The Court of Appeals expressed its "confidence" that this Court would "conclude this matter as expeditiously as it responded to [the Court's] previous opinion." *Id.* The Court would note that any delay in its response resulted from consideration of a jurisdictional issue raised by the Superintendent on remand. When the case was again remanded to this Court, the Superintendent filed a motion to dismiss for lack of jurisdiction, arguing that the

## II. ANALYSIS

### A. The Court's October 1, 1990, Abstention Decision.

■ As explained both by this Court and the Court of Appeals in earlier opinions, the *Burford* abstention doctrine requires that a federal court abstain "where a state creates a complex regulatory scheme and an exercise of federal jurisdiction would 'be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *General Railway,* 921 F.2d at 708 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976)); *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989); *Property & Casualty Ins. Ltd. v. Central Nat'l Ins. Co.,* 936 F.2d 319, 322 (7th Cir.1991); *General Railway,* 748 F.Supp. at 645. The Court concluded in its October 1, 1990, Memorandum Opinion and Order that abstention was unwarranted for the following three reasons: "(1) the case involved an issue of federal law, (2) the interpleader action in this Court had little if any effect on the state liquidation proceedings, and (3) the Court was uncertain whether any other forum could adequately protect the rights of all parties." *General Railway,* 757 F.Supp. at 913–14; *see also General Railway,* 748 F.Supp. at 644–47.

In reaching this conclusion, the Court initially conceded that *Burford* abstention frequently has been applied "where a state official acting as receiver for an insolvent insurance company is a defendant in a federal lawsuit brought by a creditor of the company." *General Railway,* 748 F.Supp. at 645 (citing cases). Moreover, the Court

interpleader action was mooted when the interpleader bond was released and the surety dismissed. The Court rejected this argument in its Memorandum Opinion and Order of September 3, 1992, finding that it retained jurisdiction to adjudicate competing claims to the interpled fund. *See General Railway Signal Co. v. Corcoran,* No. 89 C 9370, slip op., 1992 WL 220604, 1992 U.S.Dist. LEXIS 13272 (N.D.Ill. Sept. 3, 1992). Once the question of the Court's jurisdiction was resolved, the parties proceeded to re-brief the abstention issue.

noted that courts also "have abstained from deciding lawsuits filed by state officials in state courts to recover assets on behalf of insolvent insurance companies when those cases have been removed to federal court." *Id.* (citing cases). However, the Court found this case sufficiently different from the typical case involving the receiver of an insolvent insurer that abstention was not required.

First, the Court was uncertain whether the state liquidation proceedings could adequately protect the rights of all parties. *Id.* at 646. The SBA and General Railway maintained that it could not, whereas the Superintendent argued that the SBA could just as easily assert a claim in the liquidation proceeding. Because no party had submitted any authority on the ability of the state liquidation proceeding to protect the rights of all parties, the Court left this question unanswered, considering the uncertainty as a factor relevant to its analysis. *Id.*

The Court next considered whether the case involved a question of federal, as opposed to state, law. The Court explained the nature of the predominant issue as follows:

> the issue on the merits is whether the SBA is entitled to collect from [General Railway] the amount which the SBA claims on the judgment before [General Railway] pays the judgment to the Superintendent. This is not an issue of how the assets of AFFI are to be distributed, but rather an issue of whether the portion of the judgment claimed by the SBA may be considered an asset of AFFI in the first place.

*Id.* After reviewing the nature of the SBA's claim and the defenses to that claim asserted by the Superintendent, the Court concluded that "[t]he claims and defenses raised in connection with the motion to dismiss thus raise matters which are of federal, rather than state, concern." *Id.*

Finally, the Court was particularly influenced by the fact that there was no claim "against the existing estate" of the liquidated insurance company. *Id.* The Court explained that

> this is not even a case where the liquidator is attempting to recover assets that will be distributed to [the insurance company's] creditors; the Superintendent does not dispute that the SBA will eventually be entitled to its pro rata share of the net proceeds. Some courts have abstained in circumstances where the liquidator is attempting to recover assets for the estate rather than to avoid losing assets, for the reason that the liquidator's collection of assets is an important aspect of the liquidation proceedings and affects the amount available for distribution to creditors. In this case, however, the lack of any substantial dispute that the SBA is eventually entitled to its claim diminishes any effect that the exercise of federal jurisdiction would have on the liquidation proceedings.

*Id.*

The Court noted that although, standing alone, any of the three factors discussed above "might not suffice to compel exercise of federal jurisdiction, their combination in one case makes abstention inappropriate." *Id.* Thus, the Court declined to abstain and instead exercised its jurisdiction over the interpleader action.

### B. The Court of Appeals' Opinions.

In commenting on the abstention issue in its initial opinion, the first panel of the Court of Appeals noted that "three Circuit Courts of Appeal have held that the *Burford* abstention doctrine requires district courts to abstain when creditors of an insolvent insurance company attempt to use a federal forum to adjudicate their claims against the state official appointed to act as receiver for the insurer." *General Railway*, 921 F.2d at 708 (citing cases).[5]

5. The following additional decisions, including a decision from our own Court of Appeals, also have recognized the validity of this principle: *General Glass Indus. Corp. v. Monsour Medical Found.*, 973 F.2d 197, 201 (3d Cir.1992); *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of America, Inc.*, 961 F.2d 529, 531 (5th Cir. 1992); *Gonzalez v. Media Elements, Inc.*, 946

F.2d 157, 157 (1st Cir.1991); *Hartford Casualty Ins. Co. v. Borg–Warner Corp.*, 913 F.2d 419, 426 (7th Cir.1990); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249, 254–55 (5th Cir.1990); *but cf. Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1503–07 (8th Cir.1992); *Bil-*

Moreover, the Court of Appeals noted that "[f]ederal courts have deferred in particular to New York's method of liquidating insurance companies." *Id.*

Moving then to the specific factors identified by this Court that distinguished this interpleader action from the typical abstention case, the Court of Appeals explained that one issue needing further attention "is whether the questions presented are those of federal or state law." *Id.* at 709. The first panel expressed its view that "[t]his case involves questions of contract interpretation which are governed by state law." *Id.* Although the Court of Appeals alluded to the possible existence of federal issues, it explained that "a federal court may abstain even from a case posing mixed federal and state law issues." *Id.; see also General Railway,* 757 F.Supp. at 914. Having registered these comments, the Court of Appeals then left to this Court the weighing of "the relative importance of federal and state law issues" and the consideration, if appropriate, of the factors identified by the Second Circuit in *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), as relevant to this analysis. After this Court explained in its subsequent abstention decision that it could "only infer from the Court of Appeals' comments" that it disagreed with the result previously reached by this Court in considering the federal versus state law factor (*General Railway,* 757 F.Supp. at 914), the Court of Appeals then clarified in the second appeal that "the comments in our earlier opinion about the relative importance of federal and state law issues were not intended to disapprove categorically the result reached by the district court." *General Railway,* 969 F.2d at 521. Instead, that issue, like other issues relevant to the abstention question, currently are open for *de novo* consideration.

On the extent to which the interpleader action would interfere with the state liquidation proceedings, the first panel of the Court of Appeals seemed to disagree with the distinction drawn by this Court between cases involving a direct claim against the assets of the insurer and a case such as this, where the Superintendent is attempting to collect assets for the estate of the insurer but does not dispute that the SBA is entitled to a portion of those assets. The Court of Appeals doubted whether such a distinction "can be supported" because "[t]he Superintendent is empowered to collect as well as distribute assets of the defunct insurance company." *General Railway,* 921 F.2d at 709. Moreover, the first panel also indicated that this case presents even "a stronger rationale for abstention" because of the possibility that "the SBA may be entitled to the fund, but only after it becomes an asset of the insurer." *Id.*[6] When this Court subsequently expressed its belief that the Court of Appeals' discussion of this factor suggested its disagreement with the Court's own analysis, the Court of Appeals responded in the second appeal that its earlier remarks were not intended "to assess this issue definitively." *General Railway,* 969 F.2d at 521. Rather, the first panel simply "meant to express tentative doubts—not conclusions—about the district court's view that this interpleader action would not be as disruptive of the state liquidation as other federal actions." *Id.* Thus, this factor also is presently open for *de novo* consideration by this Court.

---

*den v. United Equitable Ins. Co.,* 921 F.2d 822, 827 (8th Cir.1990).

**6.** As noted in the January 25, 1991, opinion, this Court already had rejected the Superintendent's argument that the SBA could only collect under the Surety Bond Guarantee Agreements once the funds were recovered and received by the Superintendent. *General Railway,* 757 F.Supp. at 914. In ruling on the SBA's motion for summary judgment, the Court held that pursuant to the Supreme Court's decision in *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136–42, 83

S.Ct. 232, 234–37, 9 L.Ed.2d 190 (1962), the SBA, by paying on its guaranty agreements, had become subrogated to the rights of the defunct insurance company. Accordingly, because the SBA was now the equitable owner of the insurance company's rights against General Railway, it could collect the proceeds of the judgment directly from plaintiff, rather than waiting for the proceeds to become a part of the insurance company's estate. *General Railway,* 748 F.Supp. at 648. That determination was not the subject of any appeal taken in this case.

**1366**

### C. Changed Circumstances.

The Court has not wavered from its view on the abstention issue since its October 1, 1990, opinion. The Court continues to maintain that, as of the date of its earlier decision, the three factors identified above sufficiently distinguish this case from the typical insurance liquidation abstention case such that abstention is unwarranted. The second opinion of the Court of Appeals, which has the effect of retracting much of the initial panel's dicta on the abstention issue, suggests that the second panel may agree with this Court's initial decision not to abstain. Absent changed circumstances, the Court would adhere to its earlier decision and would continue to exercise its jurisdiction.

According to the Superintendent, however, circumstances have changed significantly since October 1, 1990, when this Court initially determined that it would not abstain. Of primary importance, in the Superintendent's view, is the fact that the bond originally submitted by General Railway to create the interpleader fund has been released, and General Railway has paid the entire amount of the state court judgment to the Superintendent. Thus, General Railway essentially has no further interest in this interpleader action, and the "fund" over which the Court previously exercised its jurisdiction is now a part of AFFI's estate in the New York liquidation proceeding. Moreover, both the SBA and Antonow & Fink have filed claims in the liquidation proceeding. Given these changed circumstances, the Superintendent maintains that this action would now directly and substantially interfere with his ability to carry out his functions in accordance with New York state law.

For their part, both the SBA and Antonow & Fink argue that the passage of time has proven that the state liquidation proceeding will not adequately protect their rights as claimants. Although both have filed claims in the liquidation proceeding, the Superintendent only recently acknowledged the existence of those claims. Moreover, the SBA argues that the Superintendent has failed to remit payment within 90 days of its receipt of the outstanding judgment from General Railway, as provided in the guaranty agreements, and also has failed to acknowledge the SBA's priority position in accordance with 31 U.S.C. § 3713. Although the Superintendent has notified Antonow & Fink that he has recommended allowance of its claim, he neither has acknowledged the alleged priority status of that claim, nor has he recognized Antonow & Fink's claim for interest on the amount owed. The Court originally expressed its uncertainty over whether the liquidation proceeding could adequately protect the rights of all parties. See General Railway, 748 F.Supp. at 645–46. Given what has transpired since that time, the SBA and Antonow & Fink contend that it clearly cannot.

With these "changed circumstances" in mind, the Court proceeds to consider de novo the factors relevant to its abstention analysis.

### D. Abstention Reconsidered.

Both this Court and the Court of Appeals have previously recognized that abstention generally is appropriate where a creditor of an insolvent insurance company attempts to adjudicate in federal court a claim against the appointed receiver of that insurer. General Railway, 921 F.2d at 708; General Railway, 748 F.Supp. at 645; see also Hartford Casualty Ins. Co. v. Borg–Warner Corp., 913 F.2d 419, 426–27 (7th Cir.1990). Numerous other courts have agreed. See, e.g., Grimes v. Crown Life Ins. Co., 857 F.2d 699, 704 (10th Cir.1988) ("most federal courts have declined to exercise jurisdiction in disputes like this one which present themselves in the larger context of state liquidation proceedings"), cert. denied, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989); Mondrus v. Mutual Benefit Life Ins. Co., 775 F.Supp. 1155, 1158 (N.D.Ill.1991) (Aspen, J.) (collecting cases). The question again presented here is whether the circumstances of this case are sufficiently different to warrant the exercise of federal jurisdiction.

#### 1. Interference with New York liquidation proceeding.

Although the Court earlier concluded that this interpleader action would have

only a minimal effect on the state liquidation proceeding, the Superintendent argues that the rationale underlying the Court's conclusion has been eroded by the subsequent release of the interpleader bond and the satisfaction of the state court judgment. The Superintendent argues that because the fund at issue is now a part of the estate of AFFI, the Court's earlier analysis is no longer valid.

When the Court initially considered the abstention question in its October 1, 1990, opinion, General Railway had not yet satisfied its outstanding obligation to AFFI, and the ultimate issue before the Court was "whether the SBA is entitled to collect from [General Railway] the amount which the SBA claims on the judgment before [General Railway] pays the judgment to the Superintendent." *General Railway,* 748 F.Supp. at 646. General Railway has now paid that judgment to the Superintendent. Moreover, neither the SBA nor Antonow & Fink have requested that the Court attempt to place the parties back in their original positions—that is, the circumstances that existed before the Court released the interpleader bond and General Railway satisfied the outstanding judgment. Because General Railway paid its obligation to the Superintendent (as a result of the fact that the Court's injunction was vacated and that the Court believed it was required to abstain), and because it was General Railway that initiated this interpleader action in the first instance, the Court cannot envision an entitlement to relief that would accomplish that result.

Regrettably, it is the SBA itself that is primarily responsible for the fate that befalls it here. When it became apparent that this Court intended to release the interpleader bond and to discharge the surety, the SBA failed to request a stay or an injunction from the Court of Appeals. As noted *supra,* at n. 2, the Court withheld execution of its order for two full days in order to provide the SBA with the opportunity to request injunctive relief before the appellate court. However, no request was forthcoming. The Assistant United States Attorney representing the SBA stated at an August 7, 1992, hearing that she "recommended that a stay be pursued in the Seventh Circuit;" however, the Department of Justice, which had assumed responsibility for the case, declined to pursue such a motion. (*See* Transcript of Proceedings of August 7, 1992, at 8.) Thus, although it is the SBA that would be most harmed by a decision to abstain, that organization cannot be heard to complain; it bears primary responsibility for the fact that the underlying judgment has now been paid to the Superintendent.

It should come as no surprise, then, that the Court agrees with the Superintendent that this case currently is in a posture similar to those cases in which federal courts consistently have abstained in deference to state liquidation proceedings. This is no longer a case where "there is no claim against the existing assets of AFFI." *General Railway,* 748 F.Supp. at 646. Instead, it is a case in which AFFI holds a sum of money to which the SBA and Antonow & Fink have asserted claims of ownership. It is therefore no different from the typical case in which a creditor of an insolvent insurance company attempts to adjudicate in federal court a claim against the insurer. In this posture, the case falls neatly within that line of decisions upholding the Superintendent's authority, without interference from the federal courts, to distribute the assets of the insurer amongst the various creditors or claimants. *See General Railway,* 921 F.2d at 709–10; *Hartford Casualty,* 913 F.2d at 426–27; *see also Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of America, Inc.,* 961 F.2d 529, 532 (5th Cir.1992); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.,* 910 F.2d 249, 253–54 (5th Cir. 1990).

The SBA responds to the Superintendent's position by contending that it

does not ask the court to step into the shoes of the Superintendent of Insurance and divide up actual assets of the insolvent. This suit merely asks this court to determine who is to receive General Railway's funds. The fact that the stakeholder is now the Superintendent does not change the analysis. The court has jurisdiction to properly determine whether SBA is entitled to the funds, whether

General [Railway] or the Superintendent is in possession.

(SBA Mem. at 1–2.) The Court can agree with the SBA only to the extent that the Court has jurisdiction to determine which of the claimants is entitled to the fund. In its September 3, 1992, Memorandum Opinion and Order, the Court held that it did retain jurisdiction "to determine, pursuant to the mandate of the Court of Appeals, whether it should abstain from these proceedings, and if not, what would be the proper distribution of the disputed fund." *General Railway,* No. 89 C 9360, slip op. at 12, 1992 WL 220604, 1992 U.S.Dist. LEXIS 13272. But as the above statement indicates, the question of jurisdiction is distinct from whether or not the Court should abstain. By abstaining, the Court acknowledges the existence of its jurisdiction but declines to exercise that jurisdiction in deference to the state proceeding. *See Martin Ins. Agency,* 910 F.2d at 254; *Law Enforcement Ins. Co. v. Corcoran,* 807 F.2d 38, 39 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987); *Levy,* 635 F.2d at 966. Thus, the recognition that the Court retains jurisdiction does not necessarily lead to the conclusion that its jurisdiction should be exercised in every case. Indeed, that is the crux of the abstention doctrine.

Moreover, in its present procedural posture, the SBA in fact is asking the Court to step into the shoes of the Superintendent and to adjudicate rights to an asset of the estate. Contrary to the position of the SBA, this case is no longer solely about General Railway's "fund" and which entity is entitled to receive what portion of that "fund." General Railway has no fund, and that entity, for all practical purposes, is no longer interested in this case, other than perhaps as an academic exercise. General Railway has paid the outstanding judgment and has received from the Superintendent an executed release of judgment. The claims of the SBA and Antonow & Fink are directed to the Superintendent, rather than to General Railway. For abstention purposes, therefore, it clearly does matter whether the Superintendent is in possession of the disputed *res.* The Court based a good portion of its October 1, 1990, decision on the fact that General Railway was in constructive possession of the disputed fund. Indeed, the issue on the merits was whether the SBA could collect directly from General Railway or whether it was required to wait for disbursement through the liquidation proceeding. Due to circumstances outside the Court's control, that issue no longer confronts us. Collecting directly from General Railway is not an option.

The SBA and Antonow & Fink would have the Court create the fiction that it retains possession of the interpled fund, ignoring the fact that General Railway has paid the judgment to the Superintendent. According to these claimants, such a construction is appropriate because that was the situation at the outset of the case. Such a fiction, however, although somewhat attractive in light of what has transpired here, would result in a very real intrusion into the New York liquidation proceeding because the Court would be adjudicating rights to an asset of the insurer's estate. The Court regrets the circumstances that have caused the fund to pass into the hands of the Superintendent, for resolution of the abstention question in the unique circumstances of this case has proved to be a nettlesome task for all of the courts involved. Regret, however, is not cause to ignore. In the hands of the Superintendent, the interpled fund is no different from any other asset of the estate to which an outside party has made a claim. Neither the SBA nor Antonow & Fink have provided any persuasive distinction between this case and the typical case in which a federal court abstains in deference to an insurance liquidation proceeding.

The First Circuit's decision in *Equitable Life Assurance Soc'y v. Porter–Englehart,* 867 F.2d 79 (1st Cir.1989), upon which the Court originally relied in determining that abstention was unwarranted, is no longer on point. As the Court explained in its October 1, 1990, opinion, that case involved an interpleader action brought by an insurance company when the proceeds of its policy were subject to conflicting claims. One of the claimants maintained that the federal court should abstain from resolving

the dispute because federal intervention would interfere with ongoing probate proceedings in state court. *Id.* at 83. The First Circuit disagreed, explaining that because

> life insurance policies must be paid directly to the designated beneficiary rather than distributed through the probate estate, a federal declaration concerning such proceeds in no way interferes with the work of the probate court. By asserting that the money should be paid to the estate so that the administratrix may determine who receives it, appellant begs the threshold question of the estate's entitlement.

*Id.*

In its October 1, 1990, opinion, the Court likened the present situation to that in *Equitable,* explaining that the primary issue in the case was whether the SBA is entitled to collect its portion of the fund directly from General Railway or whether the SBA must pursue its claim in the liquidation proceeding once the fund has been distributed to the Superintendent. *General Railway,* 748 F.Supp. at 647; *see also General Railway,* 921 F.2d at 709.[7] However, as explained above, it is no longer *possible* for the claimants to collect their portions of the fund directly from General Railway, at least not in this interpleader action. Because the underlying judgment has been paid to the Superintendent, what was once the interpled fund is now an asset of AFFI's estate. The estate's initial entitlement to the fund is no longer at issue. Rather, the relevant issues now relate solely to the validity, the amount, and the alleged priority status of the claims of the SBA and Antonow & Fink to assets of the estate. That was not the situation in the *Equitable* case. If the proceeds of the insurance policy had actually been paid to the administratrix of the estate and then the policy beneficiary advanced a competing claim, it is likely that the court in *Equitable* would have abstained in deference to the probate proceeding. That is the situation in which we presently find ourselves. Although the SBA and Antonow & Fink advanced their claims when General Railway still had constructive possession of the fund, those claims now are against the assets of AFFI's estate. Thus, the *Equitable* decision no longer would support a refusal to abstain in these circumstances.

For the foregoing reasons, therefore, the Court concludes that, in its present posture, the instant case would substantially interfere with the New York liquidation proceeding.

2. Federal versus state law.

The fact that the disputed funds are now assets of AFFI's estate also affects the Court's earlier conclusion that federal, rather than state, issues predominate. *See General Railway,* 748 F.Supp. at 646. When the Court initially considered the abstention question, the primary issue was not how AFFI's assets would be distributed, but instead was "whether the portion of the judgment claimed by the SBA may be considered an asset of AFFI in the first place." *Id.* As explained above, that is no longer an issue in this case because the fund is now clearly an asset of the estate, and both the SBA and Antonow & Fink essentially are making claims against that asset. Given these changed circumstances, the Court now must agree with the Court of Appeals that "[t]his case involves questions of contract interpretation which are governed by state law." *General Railway,* 921 F.2d at 709.

The primary federal question remaining here involves the SBA's claim to a priority status pursuant to 31 U.S.C. § 3713. The Court finds that the SBA's reliance upon the federal priority statute is insufficient to overcome New York's interest in regulating the liquidation of a domestic insurance company. Any other rule would permit the federal government or any of its agencies to file a federal action against an insolvent insurer merely to assert its priority under 31 U.S.C. § 3713. The Court cannot imagine that Congress intended that the federal priority statute would permit the federal government to opt out of state liquidation proceedings in this way. The result advanced by the SBA would be contrary to

---

7. The same held true for the intervening claim of Antonow & Fink.

the policies expressed in the McCarran–Ferguson Act, 15 U.S.C. § 1012(b). *Cf. Fabe v. United States Department of Treasury*, 939 F.2d 341 (6th Cir.1991) (Ohio statute setting priorities in insurance liquidation proceedings not preempted by federal priority statute), *cert. granted*, — U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992). The Superintendent is perfectly capable of analyzing the SBA's claim in relation to the provisions of the federal priority statute. Review of the Superintendent's treatment of that claim is available in the New York state courts and ultimately in the United States Supreme Court. *See Levy*, 635 F.2d at 964. Accordingly, the Court now must agree with the Superintendent that he should receive the first opportunity to consider the validity and alleged priority positions of the claims of the SBA and Antonow & Fink.

### 3. Protecting the rights of all parties.

The final factor to be considered is whether the state liquidation proceeding can adequately protect the rights of all parties to this litigation. The SBA originally maintained that it could not, and the Court expressed in its October 1, 1990, opinion its uncertainty on this question. *See General Railway*, 748 F.Supp. at 645–46. Given what has transpired since the Court's October 1, 1990, opinion, both the SBA and Antonow & Fink renew the argument that the state proceeding clearly cannot protect their interests because the Superintendent has been slow to act on their claims.

It is of great concern to the Court that the Superintendent seemingly took no action on the claims of either the SBA or Antonow & Fink until it became advantageous to its position in this litigation to acknowledge the existence of those claims and to recommend the allowance of a portion of Antonow & Fink's claim. The fortuitous timing of the Superintendent's actions undercuts the integrity and consisten-cy of the state proceeding, suggesting that the Court may be required to exercise its jurisdiction in order to protect the rights of all claimants. The Superintendent explains his delay by stating that neither the SBA nor Antonow & Fink submitted complete claim information and that he therefore was required to request additional information before acknowledging their claims. (Supp. Aff. of Hugh L. Hamilton ¶ 5.) Because these requests for additional information have not been submitted for its review, the Court can offer no opinion on the Superintendent's explanation. Moreover, because no party has submitted information on the way in which other claims to the estate have been handled, the Court cannot determine whether the response time on these particular claims is unique, or whether it simply is representative of the way in which all claims to the estate have been handled. The Court would emphasize again, however, its concern that the Superintendent fulfill his responsibilities under the New York insurance law as expeditiously as possible, without regard to outside influences such as the possible effects of his actions on pending litigation.[8]

Despite the Court's concerns, however, in light of the lack of evidence to suggest that the claims at issue here were treated differently from any other claims to AFFI's estate, the Court cannot conclude that the delay in acknowledging or adjudicating the validity of the claims would justify the Court's intervention in the liquidation process. *See Hartford Casualty*, 913 F.2d at 427 (delay in realizing on claim not a reason to interfere with state rehabilitation proceeding); *Mondrus*, 775 F.Supp. at 1158 (same). The Court has determined that the Superintendent should be afforded the initial opportunity to consider the validity and priority position of the claims at issue here. The New York statutory procedure, which provides for appeals of the Superintendent's decisions, should adequately protect

---

**8.** The Court considered the possibility of staying this action, rather than dismissing it without prejudice, and requiring the Superintendent to file periodic status reports so that it could be certain that the rights of the SBA and Antonow & Fink were being adequately protected in the liquidation proceeding. However, the Court ultimately decided against this course, concluding that such a procedure itself would be an unwarranted interference in the state liquidation proceeding.

the rights of all claimants. For all of these reasons, therefore, the Court has concluded that it must abstain.[9]

As the Court explained in its January 25, 1991, opinion, once it has determined to abstain, it may " 'choose either to dismiss the case outright or stay the federal proceeding so as to preserve the court's ability to resolve any federal law issues which are not addressed by the state court.' " *General Railway*, 757 F.Supp. at 914 (quoting *General Railway*, 921 F.2d at 710). As explained *supra*, at n. 8, there would be no point in retaining jurisdiction in these circumstances. "If federal issues arise which are not resolved by the state court, a new action may be brought." *Id.* at 914–15.

## III. CONCLUSION

Having considered the issue of abstention *de novo* in light of circumstances as they presently exist, the Court has determined to abstain in deference to the New York liquidation proceeding. Accordingly, this case is dismissed without prejudice.

---

**9.** Because the Court has determined to abstain under the *Burford* abstention doctrine, it need not consider the Superintendent's alternative argument that it also abstain under the doctrine enunciated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).